IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC DAVID, <u>et al.</u>                    :

v.                                          :    Civil Action WMN-02-3573

RADCLIFFE JEWELERS, <u>et al.</u>:


<u>**MEMORANDUM**</u>

Before the Court is a Motion to Dismiss, or in the Alternative for Summary Judgment, filed by Defendants Baltimore County, Maryland and Officer R. M. Harrison.  Paper No. 7.  The motion is ripe for consideration.  Upon a review of the motion and applicable case law, the Court determines that the motion will be granted in part and denied in part.

**I. FACTUAL BACKGROUND**

On April 6, 2001, Plaintiffs Eric David and Tony Thomas, financial advisors with offices in Towson, Maryland left their office at 4:00 p.m. for a walk before their weekly 5:00 p.m. meeting. Because Thomas was interested in buying a ring for his wife, Plaintiffs walked to the Towson Town Center Mall and visited Radcliffe's Jewelry store.

At Radcliffe's, Plaintiffs were assisted by Eric Harris, a store clerk who was also a former Baltimore County Police Officer.  Harris took them to the rear of the store and showed them a tray of rings. Plaintiffs assert that some of the ring slots in the tray were empty

and contained "sold" stickers, while Harris asserts that the tray was completely full.  Various rings on the tray were removed by Harris and shown to Thomas.  On two occasions, a ring was removed from the tray by Harris and passed to Thomas who then passed the ring on to David before it was returned to Harris.  At some point, while Harris continues to show rings to Thomas, David began to look at rings under the glass in an adjoining counter.  Harris responded to an inquiry from David about the rings in the adjoining case and upon turning back to assist Thomas, Harris said he noticed that a ring was missing from the tray in front of Thomas.  Harris accused Plaintiffs of distracting him in order to steal the ring.  Plaintiffs vehemently denied taking the ring and asked Harris to call the police so that they could prove they were not thieves.  Before the police arrived, Plaintiffs, Harris, and a plain clothes security officer searched for the missing ring on the floor and around the counter where the parties had been standing.  No ring was found.

While the parties were waiting for the police, Harris went to the back of the store to view a security surveillance tape and was gone for 15 minutes.  When Harris returned, he said that the tape showed a full tray of rings being removed from the counter. Harris told David that he thought David had the ring.  David then removed his jacket and items from his pockets and again denied having the

2

ring.

Shortly thereafter, six police officers arrived to assist. Two of the officers began searching Plaintiffs for the missing ring. Officer Woodward conducted a pat-down search of each Plaintiff, and Officer Harrison searched David's coat. The searches did not reveal the missing ring. Plaintiffs told the investigating police officers that they were with Harris every minute and never had a chance to dispose of the ring, and therefore could not have stolen the ring. The only time Plaintiffs were separated from Harris was when he left them for 15 minutes to view the surveillance tape.

An unnamed officer approached Plaintiffs and the police officers asking what happened. When the unnamed officer was told that Plaintiffs had been searched and no ring found, the officer appeared to question why Plaintiffs were still being detained. Before any answer was given, police radios alerted the officers, leaving only Woodward and Harrison to wrap up the conflict at the jewelry store.

Plaintiffs told Harrison and Woodward their version of the events. Both police officers went to view the surveillance tape. When the officers returned from watching the tape, David told Woodward that he wanted to speak with the store manager. Woodward responded that David should not worry about who the manager is and should let his lawyer find out and sue him. Later, when David and

3

Thomas were told that they would be arrested, Woodward expressed to
Plaintiff David words to the effect that he did not want to arrest
them.

Lt. Randy Guraleczka was the Baltimore County Police Department
Shift Commander for Precinct 6, on the evening of April 6, 2001.
Guraleczka received a call from Corporal Bryan Kelly that Harrison
had been dispatched to the jewelry store for the investigation of a
ring theft.  Guraleczka contacted the store clerk, Harris, to confirm
the details of the situation. Harris told Guraleczka that, while he
was showing a ring to Plaintiffs, one Plaintiff distracted him and
when he looked back at the tray of rings, he noticed that a ring was
missing.  Harris also told Guraleczka that, although he did not
witness the removal of the ring, he knew the tray was full when he
brought it out and placed it on the counter.  Guraleczka concluded
that there was probable cause to arrest Plaintiffs based on what
Harris told him.  There is no evidence that Guraleczka ever spoke
directly to Harrison, or was told Plaintiffs' version of events
before giving the order to arrest.  It is also not clear, from the
present record, whether Guraleczka spoke directly with the arresting
officers when giving the order to arrest.

After they were arrested, Plaintiffs were taken to the police
station in handcuffs and subsequently strip searched.  The searches

4

did not reveal the missing ring, and Plaintiffs were released on their own recognizance.  On several occasions prior to the scheduled trial date, the prosecutors offered to drop the charges against Plaintiffs if they would agree not to sue the jewelry store for false arrest.  Plaintiffs refused the offer.  On the day of Plaintiffs' criminal trial, the prosecutor dismissed all charges against Plaintiffs.

Plaintiffs then brought the instant action against Baltimore County, Officer Harrison, Radcliffe Jewelers, and Harris, asserting the following causes of action: Count I -Violation of civil rights under 42 U.S.C. § 1983 against Baltimore County and Officer Harrison; Count II - Negligence against Officer Harrison; Count III - Negligent supervision and training and maintenance of personnel against Baltimore County and Radcliffe Jewelry; Count IV - Malicious prosecution against all Defendants; Count V - Negligence against Harris; and, Count VI - False arrest and false imprisonment against all Defendants.  Defendants Baltimore County and Officer Harrison move to dismiss, or in the alternative, for summary judgment as to all claims against them.[1]  In responding to the motion, Plaintiffs do not contest the dismissal of all claims against Baltimore County and

---

[1] Defendants Radcliffe Jewelers and Harris have answered the complaint without filing a motion.

the common law negligence count against Harrison.  Plaintiffs do oppose the motion as to the following causes of action against Harrison: malicious prosecution; false arrest and false imprisonment; and violation of civil rights under 42 U.S.C. § 1983.

## II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Because the Court has considered evidence outside of the pleadings, the Court will treat the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under this rule, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation.  Anderson, 477 U.S. at 248.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

6

317, 323 (1986).  When considering the motion, the court assumes that all of the non-moving party's evidence is worthy of belief and justifiable inferences are drawn in favor of the non-moving party.  Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  If the movant demonstrates that there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial.  Celotex, 477 U.S. at 324.  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  Instead, the evidentiary materials must show facts from which the finder of fact could reasonably find for the non-moving party.  Anderson, 477 U.S. at 252.  At the summary judgment phase, it is not appropriate for the court to make credibility determinations, weigh the evidence, or draw inferences from the facts which are adverse to the nonmoving party; these are jury functions.  Anderson, 477 U.S. at 255.

**III. DISCUSSION**

    A. 42 U.S.C. 1983 Claim

In asserting their claim under § 1983, Plaintiffs maintain that their constitutional rights were violated when they were arrested without probable cause.  Defendant Harrison argues that she is entitled to qualified immunity as to this claim.  The Fourth Circuit has formulated a three part analysis to determine whether an officer is entitled to qualified immunity: "1) identify the right allegedly violated; 2) decide whether that right was clearly established at the time of the alleged violation; and, if so, 3) determine whether a reasonable person in the officer's position would have known that his or her conduct violated that right." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).  "If the right was not clearly established at the relevant time or if a reasonable officer might not have known his or her conduct violated that right, the officer is entitled to immunity." Smith v. Reddy, 101 F.3d 351 (4th Cir. 1996).

Here, there is no dispute that the Fourth Amendment right not to be arrested without probable cause was clearly established at the time of Plaintiffs' arrest.  Thus, the only issue is whether a reasonable person in Defendant Harrison's position would have thought that she had probable cause to effect that arrest.  Probable cause exists to support a warrantless arrest when "the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being

8

committed by the person to be arrested." <u>United States v. Miller</u>,
925 F.2d 695, 698 (4th Cir. 1991). In assessing the existence of
probable cause, district courts examine the totality of the
circumstances known to the officers at the time of the arrest. <u>See</u>
<u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983).

The record before the Court at this juncture is sparse,
consisting of only of a brief declaration from Lt. Guraleczka, and a
somewhat more detailed affidavit of Plaintiff David. Within the
record, such that it is, however, the Court finds numerous facts that
would undercut the reasonableness of any probable cause determination
on the part of Officer Harrison. Before arresting Plaintiffs, the
officers had conducted a pat-down search of each Plaintiff, had
thoroughly searched Plaintiff David's jacket, and had searched the
store without finding the alleged missing ring. Although the
videotape itself was not submitted as part of the record, Plaintiff
David states that there is nothing on the tape that would support the
conclusion that a ring was stolen. Furthermore, Plaintiffs assert
that the other officer who viewed the tape, Officer Woodward, made a
statement that would tend to indicate that he did not believe that
Plaintiffs should have been arrested. It is Officer Woodward's
reaction, in addition to the unnamed officer's questioning of why
Plaintiffs continued to be detained, that most strongly supports

Plaintiffs' position.   Where two officers who viewed the situation appear to have concluded that there was not probable cause for arrest, whether Harrison's contrary conclusion was reasonable clearly suggests a factual dispute.

Harrison's primary argument in support of her claim of qualified immunity is that she was ordered to make the arrest by her shift commander.  Defendants, however, have not directed the Court toward any case law in support of the position that the claim that one is following the orders of a superior automatically entitles one to qualified immunity.  Nor, has Harrison offered any evidence that she spoke directly with her shift commander.

Accordingly, the Court finds that Officer Harrison has not demonstrated that she is entitled to qualified immunity under the current record.

B. Maryland State Claims

The elements of malicious prosecution are: (1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) absence of probable cause to institute the proceeding; and (4) malice or a primary purpose of instituting a proceeding other than that of bringing an offender to justice.  Okwa v. Harper, 360 Md. 161, 183 (2000).  The elements of false arrest and false

imprisonment include: (1) an arrest made without legal justification, and (2) the intentional restriction without legal justification of the freedom of movement of a person who is aware of the restriction and who does not consent. Johnson v. Value Food, Inc., 132 Md. App. 118 (2000).

Officer Harrison's only challenge to these claims is her conclusion that "[b]ecause probable cause existed, these claims must fail." Motion at 18. Because there is a genuine issue of material fact as to whether there was probable cause for Plaintiffs' arrest, the Court must deny the motion for summary judgment as to these claims as well.[2]

## IV. CONCLUSION

For the above stated reasons, the Court will grant Defendants' motion as to all claims against Baltimore County, and as to Count II against Defendant Harrison, but deny the motion as to Counts I, IV and VI against Defendant Harrison. A separate order consistent with this memorandum will issue.

/s/

_____

William M. Nickerson
Senior United States District

Judge Dated: July 7, 2003

_____

[2] Additionally, the Maryland Court of Appeals has "long held that 'the malice element of malicious prosecution may be inferred from a lack of probable cause'" Okwa, 360 Md. at 188 (quoting Montgomery Ward v. Wilson, 339 Md. 701, 717 (1995)).

11