IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC DAVID, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.: WMN 02-CV3573 |
| RADCLIFFE JEWELERS, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

  The Defendants, Radcliffe Jewelers and Eric Harris, by their attorneys, Robert L. Hebb and Semmes, Bowen & Semmes, pursuant to the Federal Rules of Civil Procedure, hereby submit the following Memorandum of Law in Support of their Motion for Summary Judgment.

**I.  Introduction**

  This Memorandum in Support of Defendants' Motion for Summary Judgment addresses those counts in Plaintiffs' Complaint alleged against the Defendants Radcliffe Jewelers ("Radcliffe") and Eric Harris. Specifically, it addresses Count Three alleging "Negligent Supervision, Training and Maintenance" against Radcliffe; Count Four alleging "Malicious Prosecution: Criminal" against Radcliffe and Mr. Harris; Count Five alleging "Negligence" against Radcliffe and Mr. Harris; and Count Six alleging "False Arrest and False Imprisonment" against Radcliffe and Mr. Harris. Furthermore, Plaintiffs' claims are improperly asserted against Radcliffe Jewelers, as that name is merely a trade name. All claims are without merit and must be dismissed summarily.

## II. Statement of Facts

On or about April 6, 2001, during late afternoon, Eric David and Tony Thomas, Plaintiffs, entered a jewelry store trading as Radcliffe Jewelers. See Exhibit 1, Depo. of Eric David, at pp. 74-75. Eric Harris, Defendant and employee of Radcliffe, worked that day and assisted Plaintiffs, and more particularly, Tony Thomas. Id. at 77-79. Mr. Thomas was interested in looking at some rings. Mr. Thomas took a seat at an enclosed display case opposite Mr. Harris who sat on the other side of the case. Mr. David, who had been in a different part of the store, eventually came and stood at Mr. Thomas' right. Mr. Harris showed Mr. Thomas a heavy, platinum ring. See Exhibit 2, Depo. of Tony Thomas, at pp. 33-34. Mr. Thomas held the ring, then passed it to Mr. David who examined it, who then passed it back to Mr. Thomas to return to Mr. Harris. Id. Next, Mr. Harris showed Mr Thomas a lighter, platinum ring. Id. at 34. Again, both Mr. Thomas and Mr. David examined the ring. Id. All the while, Mr. Harris pulled each ring one at a time from the enclosed display case. Id.

Next, Mr. Harris pulled an entire tray of rings from the display case and placed it before Defendants. See Exhibit 2 at p. 36. While Mr. Harris pulled the tray from the case, Mr. David moved from Mr. Thomas' right side over to his left, Mr. David still standing and Mr. Thomas still seated. Id. at pp. 37-38. Mr. Harris showed Mr. Thomas a white gold ring from the exposed ring tray. Id. at pp. 36-37. Mr. David asked Mr. Harris a question about some other rings. Id. at p. 38. Mr. Harris glanced over at Mr. David in response to his question. Id. Mr. Harris glanced back to Mr. Thomas. Id. Mr. Harris noticed a ring was missing. Mr. Harris then asked Defendants to return the ring. See Exhibit 2 at pp. 38-39. Plaintiff's denied having the ring. See Exhibit 1 at p. 82; Exhibit 2 at p. 38-39.

Plaintiffs then suggested that Mr. Harris call security. See Exhibit 1 at p. 83; Exhibit 2 at 39-40. In fact, Plaintiff Thomas motioned for a Radcliffe employee to come over whom he believed was a security guard. See 1 at p. 40. Additionally, both Plaintiffs strenuously demanded that Mr. Harris call the police. See Exhibit 1 at 41, 89, 135; Exhibit 2 at 39, 47-48; Exhibit 3, Declaration of Eric David, at ¶¶ 33, 35, 46. At some point before the police arrived, Mr. Harris, a retired police officer himself, viewed the security video in a back room located in the store while Plaintiffs remained at the jewelry counter chatting with the store's "security guard." See Exhibit 1 at 85-88. At no time did either the "security guard" or Mr. Harris tell Plaintiffs that they were not free to leave the store, nor have Plaintiffs suggested that they were told as much. See Exhibit 1 at 86; Exhibit 2 at 97-98. Mr. Harris returned from viewing the video, which had affirmed his belief that Plaintiffs possessed the missing ring. The police eventually arrived, investigated the matter and Plaintiffs were arrested.

### III. Standard for Summary Judgment

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims from proceeding to trial).

In determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-

moving party. Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). The Court must take care not to foreclose trial when the case presents genuinely disputed, material facts. Nevertheless, as the Fourth Circuit made clear in Thompson Everett, Inc. v. National Cable Advertising, 57 F.3d 1317, 1322 (4th Cir. 1995), (1) "the mere existence of some disputed facts does not require that a case go to trial;" (2) "the disputed facts must be material to an issue necessary for the proper resolution of the case;" and (3) "the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Id. at 1323 (citations omitted).

The essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**IV.   Argument**

The court must summarily dismiss Plaintiffs' negligence, false imprisonment and malicious prosecution claims because the facts, when considered in a light most favorable to Plaintiffs, fail to establish that the actions of Defendants Radcliffe and Mr. Harris satisfy the elements of those causes of action. Section 5-402 of the Maryland Courts and Judicial Proceedings Article disposes of Plaintiffs' causes of action as a matter of law. Finally, the claims asserted against "Radcliffe

Jewelers" are improper because "Radcliffe Jewelers" is merely a trade name and lacks the legal capacity to be sued.

**A.  Defendants, Radcliffe and Eric Harris are immune from any liability pursuant to the Maryland Shopkeepers statute; Maryland Courts and Judicial Proceedings Article Section 5-402.**

As is amply demonstrated within the statement of facts, the Defendants had overwhelming evidence of probable cause to believe that the Plaintiffs committed a crime of theft. As such, Maryland law unequivocally prohibits holding Radcliffe or Mr. Harris civilly liable for the allegations proffered by the Plaintiffs.

Md. Cts & Jud. Proc. Code Ann. §5-402 (2002) reads as follows:

> A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for…malicious prosecution, false imprisonment, or false arrest of the person detained or arrested, whether the detention or arrest takes place by the merchant or by his agent or employee, if in detaining or in causing the arrest of the person, the merchant or the agent or employee of the merchant had, at the time of the detention or arrest, probable cause to believe that the person committed the crime of "theft". . .

Md. Cts & Jud. Proc. Code Ann. §5-402 (2002). The Defendants, Radcliffe and Mr. Harris had probable cause that Plaintiffs' committed a theft and acted thereon. Thus, section 5-402 prohibits holding Eric Harris and Radcliffe civilly liable. Plaintiffs' claims must be dismissed.

The Maryland Court of Appeals has held that probable cause consists of a reasonable ground of suspicion supported by circumstances strong enough to warrant a cautious person's belief that the accused is guilty. Palmer Ford, Inc. v. Wood, 298 Md. 484, 493, 471 A.2d 297 (1984). In determining whether probable cause exists, the focus is on the facts known, or which reasonably should have been known, to the one initiating the criminal proceeding. Id. at 495. The

threshold question of what facts are sufficient to show probable cause is one of law for the court; but whether such facts are proved is for the jury. Banks v. Montgomery Ward & Co., 212 Md. 31, 42, 128 A.2d 600, 606.

Furthermore, probable cause may exist despite denial of involvement in a theft. The Maryland Court of Special Appeals made this clear in Herrington v. Red Run Corporation, 148 Md. App. 357, 811 A.2d 894 (2002). In this case, plaintiffs were accused of stealing groceries by passively allowing the cashier to undercharge them. Id. at 350-60, 811 A.2d at 895-96. In that case, the Plaintiffs denied any involvement and theft charges against them were later *nol prossed*. Id. In considering whether probable cause existed for their detention, however, the court had this to say:

> [T]he issue [is] whether the facts known to [the merchant] indicated that a theft was afoot by way of a coordinated effort between [plaintiffs] and the cashier. In accord, [the merchant] obviously had probable cause to detain [plaintiffs], irrespective of the fact that they denied involvement.

Id. at 363, 811 A.2d at 898. It is clear that probable cause may exist notwithstanding that person's denial or actual involvement in any theft. Furthermore, probable cause may exist notwithstanding a later lack of evidence to support a prosecution.

In the case at bar, the Plaintiffs claims must fail because Defendants Eric Harris and Radcliffe acted pursuant to probable cause premised upon all the facts known to them at the time of the incident. Specifically, employee Eric Harris, a former decorated Baltimore County police officer and investigator, had a reasonable suspicion that a theft was afoot.

It must be noted at the outset that Mr. Harris is an experienced criminal investigator and has an extensive background in criminal investigation. See Exhibit 3, Depo. of Eric Harris, at p.

19.     Specifically, Mr. Harris has a combined experience of 28 years in the field of law enforcement; including serving 20 years with the Baltimore County Police Department. Id. Further, Mr. Harris has served as a military police officer and as a police officer for the Veteran's Administration. Id. Mr. Harris' credentials more than qualify him as an experienced investigator capable of determining that a crime is afoot. See Exhibit 5, Harris resume.

In fact, Mr. Harris had probable cause to believe a theft occurred in his presence by the Plaintiffs. Plaintiffs aroused the suspicion of Mr. Harris prior to the loss by acting in an unusual manner. See Exhibit 3, pp.140-145. Mr. Harris noticed that Mr. David wore a 3/4 length leather jacket while other shoppers were in shorts due to the day's warm weather. See Exhibit 3 at pp. 140-41. Plaintiff, Thomas initially told Mr. Harris that Mr. Thomas was shopping for a 10-year anniversary gift, only later to be told that Mr. Thomas was married for fourteen years. Id. at pp. 59-60. These indications sparked some suspicion in Mr. Harris, which was later fueled by more obvious behavior.

Plaintiffs examined numerous rings, passing them back and forth between one another, purportedly trying to distract Mr. Harris. See Exhibit 3 at pp. 82, 143. Further, Plaintiffs' behavior continued to exhibit attempts at distracting Mr. Harris, specifically by taking turns at diverting his attention. For instance, and perhaps the most bald, undisguised attempt, Plaintiff Eric David, while Tony Thomas examined a ring, directed Mr. Harris' attention to a picture on a wall (not for sale), asking how much it cost. Id. at p. 88, 143. The suspicious behavior continued. Mr. Harris noted that Mr. David's gaze continued to focus on the store's surveillance cameras, and that Mr. David's subsequent movements seemed to indicate an attempt to position himself out of view of the cameras. Id. at pp. 149-50.

Mr. Harris presented a full tray of rings to Plaintiff Thomas for review in order to keep an accurate count. See Exhibit 3, pp. 69-72. Mr. Harris wanted to ensure a full count within the tray as an affirmative way to keep an accurate count of rings being examined; i.e.: if a ring slot is empty in the tray, a ring is missing. Id. Mr. Harris checked and double checked that the tray had a full complement of rings; i.e.: 11 rings. Id. When asked why he double check the ring count in the tray, Mr. Harris testified "to ensure myself that the tray was full, 11 complete rings. If Mr. Thomas or Mr. David decided to take a ring out of there, I wanted to know and I wanted to know it right away." Id. at 71.

Each instance of Plaintiffs' odd behavior help build an ever-increasing suspicion in Mr. Harris, culminating in a reasonable belief that a crime was committed by Plaintiffs when he noted a ring missing. In fact, multiple contemporaneous inventory searches confirmed that a platinum wedding band was missing. See Exhibit 3, Harris depo., pp 42, 44, and Exhibit 6, Harris statement (a.k.a. Harrison depo., exhibit 4). A copy of the invoice for the missing ring is attached hereto as Exhibit 9 (a.k.a Harris depo., exh., 3).

Mr. Harris documented the odd behavior of the plaintiffs in a incident report that he prepared regarding the occurrence. See Exhibit 6, Harris incident report. In his deposition, Mr. Harris testified that the contents of the statement are true and correct to the best of his knowledge, and an accurate reflection of his recollection. See Exhibit 3, p. 140. In his statement as well as his deposition, Mr. Harris acknowledges that he presented the Plaintiffs a full tray of wedding bands. See Exhibit 6. While being distracted, Mr Harris "saw out of the corner of my eye Mr. Thomas quickly pulling his hand back away from the display case in front of me. I immediately noticed a ring missing from the display." See Exhibit 6. Plaintiff, Thomas acknowledged in his

witness statement to the police that he did not notice whether any spots were empty in the ring tray when it was initially presented to him by the clerk, Mr. Harris. See Exhibit 7, Thomas witness statement (a.k.a. Thomas depo., exh., 2). However, Plaintiff Thomas did acknowledge that one ring slot was empty after the clerk, Mr. Harris, inquired whether he removed any rings from the tray. Id.

Mr. Harris viewed a security video that further supported his suspicion that a theft was afoot by the efforts of Plaintiffs. See Exhibit 3 at p. 111. Mr. Harris testified that the video depicted Plaintiff Thomas handing something to Mr. David, who sticks it in his pocket and walks away. Id. These events, undisputed and taken collectively at the time of their occurrence, indicate that Mr. Harris, reasonably considering the facts apparent to him, had probable cause to believe a theft had occurred. Therefore, the Maryland Shopkeepers statute provides immunity to the Defendants, and the Plaintiffs' claims fail as a matter of law.

**B. Beyond the Shopkeepers Statute, the undisputed facts demonstrate that Plaintiffs' claims fail as a matter of law.**

1. False Arrest/False Imprisonment Claims

Under Maryland law, to establish a false imprisonment claim, the Plaintiffs must prove that Defendants deprived them of their liberty with neither Plaintiffs' consent nor legal justification. See Great Atl. & Pac. Tea Co. v. Paul, 256 Md. 643, 654, 261 A.2d 731, 738 (1970). Plaintiffs' deposition testimony demonstrates that neither Eric Harris nor any other employee of Radcliffe Jewelers deprived them of their liberty. Without establishing, at minimum, a potential deprivation of liberty, Plaintiffs' false imprisonment/false arrest claims must fail as a matter of law.

Specifically, Plaintiff David explains that nobody ever directed Plaintiffs to remain in the store. See Exhibit 1 at p. 185. Further, Plaintiffs were never physically detained by Eric Harris or any other employee of Radcliffe Jewelers. See Exhibit 2 at pp. 97-99. Plaintiff Thomas explains that neither he nor Plaintiff David were ever physically touched or escorted to a non-public area of the store by Eric Harris or any other employee of Radcliffe Jewelers. Id. Instead, Eric Harris remained positioned on the opposite side of the display counter up until the police arrived. See Exhibit 1 at p. 176. Nobody ever ordered Plaintiffs to stay in the store. Plaintiffs voluntarily remained in the store. In fact, Plaintiffs demanded that Eric Harris call the police. See Exhibit 1 at 41, 89, 135; Exhibit 2 at 39, 47-48; Exhibit 4, Declaration of Eric David at ¶¶ 33, 35, 46. Therefore, Plaintiffs have are incapable of establishing that Defendants deprived them of their liberty, and thus their false imprisonment/false arrest claims must be summarily dismissed.

2.  Malicious Prosecution Claims and Negligence Claims

The elements of malicious prosecution were set forth in Exxon Corp. v. Kelly, 281 Md. 689, 693, 381 A.2d 1146, 1149 (1978), quoting from Durante v. Braun, 263 Md. 685, 688, 284 A.2d 241, 243 (1971), and are as follows:

> "'The necessary elements of a case for malicious prosecution of a criminal charge are . . . (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'malice', or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.'"

First, the Plaintiffs demanded the presence of the police at the scene. Plaintiffs demanded that Eric Harris call the police. See Exhibit 1 at 41, 89, 135; Exhibit 2 at 39, 47-48; Exhibit 4,

Declaration of Eric David at ¶¶ 33, 35, 46. Once the police arrived, an investigation ensued and a determination was made by the police (not Radcliffe's or Mr. Harris) to arrest the Plaintiffs. <u>See</u> Exhibit 8, Harrison depo., pp. 91-99. As Plaintiffs sought the police, it was not Radcliffe's or Mr. Harris that initiated the criminal process.

Secondly, Plaintiffs' must prove the absence of probable cause for which they cannot as demonstrated in argument A. There existed overwhelming probable cause that a crime of theft was committed.

Lastly, Plaintiffs must demonstrate malice in the Defendants alleged pursuit of the criminal proceeding beyond bringing an offender to justice. As noted, it was the Plaintiffs that requested police intervention and not Radcliffe or Mr. Harris. Furthermore, there simply exists no evidence of any malice untoward the Plaintiffs by any Defendant in this action.

**C. Plaintiffs improperly assert their claims against "Radcliffe Jewelers."**

As indicated in Defendants' Answer to Plaintiffs' Complaint, "Radcliffe Jewelers" is merely a trade name. <u>See</u> Defs.' Ans. at ¶ 6. As such, Radcliffe is not an entity capable of being sued. Specifically, under Maryland Rule 2-202 (applicable here pursuant to Federal Rule of Civil Procedure 17 (b)), "Radcliffe Jewelers" lacks the capacity to be sued. Thus, Plaintiffs' claims against "Radcliffe Jewelers" must be dismissed.

**D. Defendants adopt and incorporate as if fully stated herein any argument proffered by Co-Defendants, in their respective Motion for Summary Judgment and Memorandum, that may provide further grounds for summary judgment as it pertains to Radcliffe and Mr. Harris**.

WHEREFORE, Defendants, Eric Harris and "Radcliffe Jewelers," respectfully requests that this Honorable Court grant their Motion for Summary Judgment.

        /s/
Robert L. Hebb
Federal Bar No. 23425
Semmes, Bowen & Semmes
250 West Pratt Street
Baltimore, Maryland  21201
(410) 539-5040

Attorneys for Defendants
Radcliffe Jewelers and Eric Harris

(B0411337.WPD;1); 11961-3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC DAVID, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.: WMN 02-CV3573 |
| RADCLIFFE JEWELERS, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

**Table of Authorities**

1. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

2. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

3. Banks v. Montgomery Ward & Co., 212 Md. 31, 128 A.2d 600 ().

4. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

5. Durante v. Braun, 263 Md. 685, 284 A.2d 241 (1971).

6. Exxon Corp. v. Kelly, 281 Md. 689, 381 A.2d 1146 (1978).

7. Fed. R. Civ. P. 17(b).

8. Fed. R. Civ. P. 56(c).

9. Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir. 1987).

10. Great Atl. & Pac. Tea Co. v. Paul, 256 Md. 643, 261 A.2d 731 (1970).

11. Herrington v. Red Run Corporation, 148 Md. App. 357, 811 A.2d 894 (2002).

12. Maryland Rule 2-202.

13. Md. Cts & Jud. Proc. Code Ann. §5-402 (2002).

14. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

15. Palmer Ford, Inc. v. Wood, 298 Md. 484, 471 A.2d 297 (1984).

16. Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282 (4th Cir. 1987).

17. Shealy v. Winston, 929 F.2d 1009 (4th Cir. 1991).

18. Thompson Everett, Inc. v. National Cable Advertising, 57 F.3d 1317 (4th Cir. 1995).

/s/
Robert L. Hebb
Federal Bar No. 23425
Semmes, Bowen & Semmes
250 W. Pratt Street
Baltimore, Maryland  21201
(410) 539-5040
Attorneys for Defendants
Radcliffe Jewelers and Eric Harris

(B0411337.WPD;1); 11961-3