IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERIC DAVID, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 02-CV3573 (WMN) |
| | ) |
| RADCLIFFE JEWELERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
BY DEFENDANTS RADCLIFFE JEWELERS AND ERIC HARRIS
NOTICE OF FILING LENGTHY EXHIBITS**

Come now plaintiffs Eric David and Tony Lamont Thomas, by and through their counsel

Ted J. Williams, to oppose the motion for summary judgment filed by defendants Radcliffe

Jewelers and Eric Harris.

**INTRODUCTION**

The Complaint brings the following causes of action against the defendants:[1]

Count III - Negligent Supervision, Training and Maintenance of Personnel against

Radcliffe Jewelers.

Count IV - Malicious Prosecution (Criminal) against Radcliffe Jewelers and Eric Harris.

Count V - Defendant Harris' Negligence against Radcliffe Jewelers and Eric Harris.

Count VI - False Arrest and False Imprisonment against Radcliffe Jewelers and Eric Harris.

---

[1]     This motion does not address the action against Officer Harrison. A separate
opposition is filed as to claims against her.

**Plaintiffs Request Dismissal of Negligence Claims.**

Plaintiffs sued defendants both for intentional and negligent torts. Discovery has revealed that plaintiffs' claims against Eric Harris and Radcliffe Jewelers (the "Store") are for intentional torts only and do not stem from negligence. Therefore, plaintiffs voluntarily request dismissal of the two negligence claims against the defendants.

**The Evidence in the Summary Judgment Motions by Officer Harrison.**

In addition to the instant summary judgment motion, co-defendant Officer Rashelle Harrison filed two summary judgment motions in this case. The first summary judgment motion resulted in a decision dated July 7, 2003, and the second is pending at this time.

Plaintiffs incorporate into this opposition, the evidence they presented in opposing the two summary judgment motions by Officer Harrison and their discussion of the facts in Plaintiffs' Response to Defendants' Motion to Dismiss, and In the Alternative, for Summary Judgment, filed February 14, 2003 and in Plaintiffs' Opposition to Defendant Harrison's Motion for Summary Judgment ("Harrison Opposition").

Plaintiffs' evidence consists of the following exhibits attached to the Harrison Opposition: **Exhibit A**, Declaration of Eric David; **Exhibit B**, Second Declaration of Eric David; **Exhibit C**, Declaration of Tony Lamont Thomas; and **Exhibit D**, the evidence videotape[2]. Plaintiff also incorporate the selected parts cited here of the 110-page Appendix to Defendant Harrison's Motion for Summary Judgment.

---

[2]    After the arrest, the original videotape was taken by the police as evidence. [Crime Report, App. 4] Judge G. Darrell Russell of the District Court of Maryland ordered the videotape enhanced to show only the cameras in the Diamond Section for the State Attorney for use at trial, and he ordered copies made for counsel for the defendants in the criminal case (plaintiffs in the instant case). [Statement of Eric Harris, App. 8; Second Declaration of Eric David, ¶ 42]

Much of the evidence provided by Mr. Harris and the Store is identical to that in Officer Harrison's Appendix. For convenience, whenever plaintiffs refer to evidence used by or against the police officer's motion, plaintiffs will cite the evidence the same way they did in opposing the police officer's motion, by the document name, and if relevant, the page number of the Appendix. Plaintiff will cite to documents accompanying the motion by Mr. Harris and the Store not included in the Appendix by the exhibit number, name of the document and the page.

**Probable Cause**

The principal factual issue to be resolved is whether Mr. Harris had probable cause to believe plaintiffs stole a wedding ring. The Maryland Shopkeepers statute, MD Cts & Jud Proc Code Ann. § 5-402 (2002) ("Shopkeepers Act"), upon which the defendants rely, frees merchants and their employees from liability for the torts alleged here only when the merchant had probable cause to believe the accused person committed the crime of theft of the merchant's property.

Plaintiffs contend liability for the intentional torts against the Store is based on a *respondeat superior* theory of law, so the Store also is liable if Mr. Harris acted without probable cause. Plaintiffs assert that the evidence overwhelmingly demonstrates that Mr. Harris did not have probable cause for his actions, and therefore the Shopkeepers Act does not apply to either defendant.

## THE FACTS

**A.     Undisputed, Disputed and Omitted Facts in the Memorandum.**

Plaintiffs do not dispute the Statement of Facts on page 2,[3] in the Memorandum in Support

of Defendants' Motion for Summary Judgment ("Memorandum") except plaintiffs dispute that Mr.

David had been separated from the other two men in a different part of the Store and "eventually"

joined them. [Declaration of Eric David, ¶¶ 16-17; Exh. 1, Deposition of Eric Lafayette David, p.

78 (he stopped to look at crystals "for a few seconds until I noticed the price and kept on moving)]

Plaintiff do dispute many of the statements on page 3 in the Memorandum.

The facts omitted by the defendants in their Statement of Facts and the disputed facts

include the following:

Mr. Harris handed Mr. Thomas a white gold ring and told Mr. Thomas the price of the ring

was about $200.00. Mr. Thomas looked at the white gold ring, said, "no, I don't like white gold,"

and **gave the ring back to Mr. Harris**. **Mr. Harris had the white gold ring in his hand.** [Exh.

2, Deposition of Tony Lamont Thomas, pp. 36-37; Declaration of Tony Lamont Thomas, ¶¶ 18

& 19.] When Mr. Thomas told Mr. Harris he did not want the white gold ring, that is when Mr.

David asked a question of Mr. Harris. At that time Mr. Harris answered the question, just briefly

glanced over at Mr. David, looked back at Mr. Thomas and then said, "Stop playing." [Exh. 2,

Deposition of Tony Lamont Thomas, p. 38]  When Mr. Harris answered Mr. David's question, he

turned aside for a split second. It was not long enough for Mr. Thomas to reach into the display

---

[3]     There is differing evidence whether Mr. David first stood on the right side of Mr.
Thomas and then moved to the left side or whether he first stood on the left side and moved to the
right. This difference in fact is not material.

4

tray, take a ring and move his hand back without being seen. [Declaration of Tony Lamont Thomas, ¶¶ 16-17]

When Mr. Harris took the tray of rings from the display case, he was sure there were no open slots in the tray. [Exh. 3, Deposition of Eric Harris, pp. 69-70] The police report prepared by Officer Harrison immediately after the arrest based on the statement of Mr. Harrris, was as follows:

> Mr. Thomas looked at the ring and handed it back to Mr. Harris. Mr. David then directed Mr. Harris attention to a display case to the left of Mr. Thomas and asked Mr. Harris how much the rings in that display case cost. Mr. Harris quoted Mr. David a price and then directed his attention back to the display case **to return the ring that Mr. Thomas had handed back to him when he noticed one of the slots were empty.**

[Crime Report, App. 2 & 3] [Emphasis added]

After Mr. Harris said "Stop playing," he demanded the return of a ring. Mr. Harris immediately said, "If you just give it back to me, I won't have to call the police." [Exh. 2, Deposition of Tony Lamont Thomas, p. 39]  Mr. Harris several times threatened to call the police if the plaintiffs did not return "my ring." [Exh. 2, Deposition of Tony Lamont Thomas, p. 39]  Mr. Harris made the statement five, six or seven times. Plaintiffs' insistence that the police be called did not occur until Mr. Harris first threatened to call the police several times. [Exh. 2, Deposition of Tony Lamont Thomas, pp. 47-48]

Mr. Harris was getting agitated. [Exh. 2, Deposition of Tony Lamont Thomas, p. 39] Plaintiffs were yelling at Mr. Harris, denying they had taken any ring. [Declaration of Eric David, ¶ 33]  A Store security guard heard the commotion and walked near Mr. Harris and the plaintiffs. Mr. Harris motioned the Store security guard over. [Exh. 1, Deposition of Eric Lafayette David.

p. 83, l. 16-19] That security guard was Ramunas Kligys, a Baltimore County Police officer for 17½ years who was working at the Store that day as a non-uniformed security officer. [Declaration of Ramunas Kligys, App. 105, ¶¶ 2-3]

Mr. Harris and plaintiffs told the security officer the situation, and all three of them looked for a ring on the floor, in the chair and in the back of the counter. Nobody found a ring in the places they looked. [Exh. 1, Deposition of Eric Lafayette David. pp. 83-85; Declaration of Eric David, ¶ 34]

When the searchers did not find a ring, Mr. Harris went to a back room to view the videotape while the security officer guarded the plaintiffs and, the plaintiffs believed, was there to make sure the plaintiffs did not leave the Store.  [Exh. 1, Deposition of Eric Lafayette David. pp. 85, 185]

When Mr. Harris returned from viewing the videotape, he told plaintiffs the videotape showed that the tray was full when he removed the tray from the counter, and he accused Mr. David of having the ring in his possession. [Exh. 1, Deposition of Eric Lafayette David. p. 87; Declaration of Eric David, ¶ 40]  Mr. Harris did not tell the truth when he said the videotape showed a full tray. The camera did not take a sufficient closeup view of the scene to show the contents of the tray. [Declaration of Eric David, ¶ 41; Deposition of Rashelle M. Harrison, App. 55]

After Mr. Harris returned from viewing the videotape, Mr. David became aware that Mr. Harris appeared to be carrying a gun under his coat. [Declaration of Eric David, ¶ 45]

Although neither Mr. Harris nor Mr. Kligys explicitly told plaintiffs they were not free to leave the Store, the actions of the personnel at the Store were such that plaintiffs reasonably

believed they were not free to leave the Store after they were accused of a crime. In fact a guard was between the plaintiffs and the exit almost the entire time. [Declaration of Tony Lamont Thomas, ¶ 30; Second Declaration of Eric David, ¶ 39; Exh. 1, Deposition of Eric Lafayette David. pp. 86]

From the time the plaintiffs first moved to the back of the Store, they never left the area next to the jewelry counter. They never had any physical contact with anyone or were physically close to any other person except Store personnel. If they had taken the ring, it would have had to have been on the person of one of the plaintiffs or Store employee or it would have been in the particular area of the Store where plaintiffs were standing. [Declaration of Eric David, ¶ 37; Second Declaration of Eric David, ¶ 22]

The plaintiffs were under surveillance by at least two cameras and by at least one highly experienced police officer at all times. If they had a stolen ring, they could not have gotten rid of it without being seen. [Declaration of Tony Lamont Thomas, ¶ 21; Second Declaration of Eric David, ¶ 30]

When Mr. Harris accused Mr. David of having the ring. Mr. David took off his jacket and threw it on the counter. He removed all items from his pockets. [Declaration of Eric David, ¶ 44]

When the police arrived, Officer Kyle Woodward took each plaintiff separately around a corner to conduct a search. The searches took several minutes each. The searches were completely thorough and included the plaintiffs taking off their shoes. Officer Harrison searched Mr. David's coat. Her search was so complete that she found a tiny little hole in the coat. The nature of the police search was such that if either of the plaintiffs had a ring in his possession, the police officer would have found it. [Declaration of Eric David, ¶¶ 48-50] Given the level of scrutiny, the

plaintiffs would have been noticed had they attempted to secret a ring on their bodies in such a way that the ring would not have been found during Officer Woodward's search. [Second Declaration of Eric David, ¶ 33]

The police officers did not find a ring during their search nor any evidence that plaintiffs had stolen a ring. [Declaration of Eric David, ¶ 51]

At the second and third paragraphs on page 7 of the Memorandum, the defendants make a number of statements that are disputed by the plaintiffs. The record does not demonstrate that Mr. Harris conveyed those specific assertions to Officer Harrison. They are not stated in her arrest report, and she did not recite them in her deposition as information she received from Mr. Harris. [Crime Report, App. 2-4 and Deposition of Rashelle M. Harrison, beginning at App. 39] Plaintiffs have expressly denied each and every one of the allegations in the second and third paragraphs of page 7 of the Memorandum. See Second Declaration of Eric David, ¶¶ 5-16; [Declaration of Tony Lamont Thomas, ¶¶ 6-15]

The statement in the second paragraph on page 8 of the Memorandum that the missing ring was a platinum wedding band is also disputed. Mr. Harris reported to the police that the ring plaintiffs were accused of stealing was a white gold band with a retail value of $1,200.00. [Crime Report, App. 1 & 4] The written statement purportedly made by Mr. Harris the day after the arrest (called "Harris incident report" in the Memorandum) states that on the day following the arrest, the Store performed a complete inventory of wedding bands and determined that the only ring missing was a platinum wedding band with a platinum center and a ridged gold edge valued at $924.00. [Statement by Eric Harris, App. 6] The white gold band Mr. Harris reported stolen was

**not** missing, and Harris never informed the police that the ring reported to be stolen was not missing. [Eric Harris Deposition, App. 29B]

The statement made in the last paragraph on page 8 of the Memorandum that Mr. Harris saw out of the corner of his eye Mr. Thomas quickly pulling his hand away from the display case is also disputed. [Declaration of Tony Lamont Thomas, ¶¶ 16-17]

Plaintiffs dispute the statement in the first full paragraph of page 9 of the Memorandum that the videotape depicted Mr. Thomas handing something to Mr. David who sticks it in his pocket and walks away. [Declaration of Eric David, ¶¶ 42-43; Second Declaration of Eric David, ¶¶ 24-29] The actual videotape is included in plaintiffs' evidence for the Court to review for itself.

Plaintiffs dispute the statement in the first paragraph of page 10 of the Memorandum that plaintiffs voluntarily remained in the Store. See evidence cited above on that issue.

Plaintiffs dispute the statement in the first paragraph of page 11 of the Memorandum that Mr. Harris did not initiate the criminal process. The only evidence relied on by police to make the arrest were the statements Mr. Harris made to the police. See *i.e.*, Crime Report, App. 1-4; Deposition of Eric Harris, App. 32-33; Deposition of Rashelle M. Harrison, App. 60-61; Deposition of Lt. Randy Guraleczka, App. 92 p. 23; Paragraph 7 of Declaration of Officer Kyle Woodward, App. 104.

**B.    Inferences from the Facts.**

The facts, viewed in the light most favorable to the plaintiffs, are that Mr. Harris was holding a white gold ring in his hand, getting ready to return it to the slot in the tray where it belonged, when momentarily distracted by a question, he looked down at the tray, saw one slot open and forgot that he was holding in his hand the ring belonging in that slot.

Mr. Harris accused the plaintiffs of stealing a ring. At the very time he began accusing the plaintiffs of a crime, he was holding in his hand the very ring he was charging plaintiffs of stealing.

Mr. Harris was agitated. When plaintiffs denied stealing, he threatened several times to call the police. Mr. Kligys, a police officer acting as the Store's security guard, heard a commotion and came close. Mr. Harris called over the security guard, and the two Store employees and two plaintiffs searched for a missing ring on the floor, in the chair and in the back of the counter. No ring was found in the locations searched. After Mr. Harris made several threats to call the police, plaintiffs agreed that the police should be called so they could clear their names. Someone at the Store called the police.

Mr. Harris left plaintiffs under the watchful eye of Mr. Kligys while he went to a back room to view the Store's surveillance videotapes. Mr. Harris returned from viewing the videotape and told plaintiffs that the videotape showed that the tray was full when he removed the tray from the counter, and he accused Mr. David of having the ring in his possession. Mr. Harris was lying to the plaintiffs. The videotape did not show the contents of the tray.

At some point Mr. Harris must have realized that the ring was not missing. He chose not to acknowledge his mistake to the plaintiffs or to the police. The lie told by Mr. Harris about the contents of the videotape supports the inference that before he returned from viewing the videotape, Mr. Harris realized he had the ring in his possession the whole time.

Mr. Harris continued to accuse the plaintiffs of theft of a ring. He told the investigating police officers that he was sure plaintiffs stole a ring. Although the ring Mr. Harris was holding when he accused plaintiffs of a crime sold for only $200.00, Mr. Harris told the police that the

missing ring was a white gold band selling for $1,200.00, and therefore a felony rather than a misdemeanor.

Even if he had not known of the whereabouts of the ring he was accusing plaintiffs of stealing, Mr. Harris had to have known that plaintiffs could not have possessed a ring. He knew that the videotape did not show any theft of a ring. Plaintiffs were thoroughly searched by police, and no ring was found. Plaintiffs were not in close physical proximity to any person other than police and Store employees[4]. They were under surveillance at all times by at least two Store cameras and at least one experienced police officer. Despite the lack of physical evidence, Mr. Harris insisted that plaintiffs be arrested. He told police he was sure plaintiffs had stolen a ring.

After the arrest, Mr. Harris began to embellish his story. He prepared a report the day after the arrest describing plaintiffs, particularly Mr. David, as acting suspiciously. He had not told Officer Harrison those details, such as an allegation that Mr. David asked the price of a picture on the wall or was trying to position himself out of the view of the cameras. Mr. Harris wrote in his report that he saw Mr. Thomas pulling his hand back away from the display case just before the accusation was made, but he told Officer Harrison that he did not witness either plaintiff take a ring. [Crime Report, App. 3] The Court should draw the inference that Mr. Harris made his report in an attempt to cover up his mistake.

---

[4]    The written statement of Mr. Harris says two unknown females walked into the store and "made contact" with the plaintiffs. [Statement by Eric Harris, App. 6] In his deposition testimony, Mr. Harris said the two females "threw their arms around [plaintiffs]". [Exh. 3, Deposition of Eric Harris, pp. 143-133] These accounts by Mr. Harris are thoroughly disputed. [Declaration of Tony Lamont Thomas, ¶¶ 4, 23-26; Second Declaration of Eric David, ¶¶ 17-22] They are further evidence Mr. Harris was covering up.

The only wedding band found missing from the Store during an inventory the day after the arrest was a platinum band of a very different description from the ring Mr. Harris told police plaintiffs had stolen. Mr. Harris continued his cover-up by including a description of the platinum band in his report as the stolen property. The Court can infer cover-up from evidence that Mr. Harris never notified police or prosecutors that the ring described in the arrest report was not missing.

The evidence seen in the light most favorable to plaintiffs demonstrates that plaintiffs were not free to leave the Store after Mr. Harris several times threatened to call the police, even though no one told plaintiffs in so many words that they could not leave and even though no one except police physically touched the plaintiffs. A guard was between plaintiffs and the door at all times. When Mr. Harris returned from viewing the videotape, he was carrying a gun. That Mr. Harris chose to hide his mistake rather than admit it to plaintiffs is itself evidence that Mr. Harris believed he already committed the tort of false arrest and false imprisonment before he realized his mistake. When Mr. Harris realized his mistake, he believed he and the Store were already open to a false arrest lawsuit by plaintiffs.

## THE LAW

### A.    The Legal Standard for Summary Judgment

When a summary judgment motion is brought, the facts are to be construed in the light most favorable to the nonmoving party. *Weick v. O'Keefe*, 26 F.3d 467, 468 (4th Cir. 1994). As the Court stated in its July 7, 2003 Memorandum decision, denying summary judge to the police officer defendant on false arrest and malicious prosecution counts, "the court assumes that all of the non-moving party's evidence is worthy of belief and justifiable inference are drawn in favor

of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)." July 7 Memorandum at 7.

In order to defeat a summary judgment motion, the opposing party need only show the facts from which the finder of fact could reasonably find for the non-moving party. Memorandum at 7. Therefore, If the record is unclear as to whether a genuine issue of material fact is presented, the trial court must deny a motion for summary judgment.

The plaintiffs are entitled to have "[their] version of all that is in dispute accepted, all internal conflicts in it resolved favorably to [them], the most favorable of possible alternate inferences from it drawn in [their] behalf; and finally to be given the benefit of all favorable legal theories invoked by the evidence so considered." *Charbonages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

The Maryland courts have held that summary judgment is generally inappropriate in cases involving false imprisonment and malicious prosecution. *Carter v. Aramark Sports and Entertainment Services, Inc.*, 835 A.2d 262, 271, 153 Md. App. 210 (2003).

**B.     Mr. Harris Did Not Have Probable Cause.**

When the facts are viewed in the light most favorable to the plaintiffs, there is no doubt that a jury could find that Mr. Harris did not have probable cause to procure the arrest of plaintiffs for theft or to initiate and carry on a criminal prosecution.

Defendants rely on *Herrington v. Red Run Corporation*, 811 A.2d 894, 148 Md. App. 357 (2002) for the proposition that probable cause can exist even if the accused denies the crime. In *Herrington*, the accused was found in possession of the goods he was accused of stealing. The court said:

13

> [E]xclusive possession of recently stolen goods, absent a satisfactory explanation, permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief.

*Herrington*, 811 A.2d at 897. In the instant case, no ring was ever found on the plaintiffs despite a thorough search and despite the inability of the plaintiffs to dispose of a ring. When the goods are not found on the accused, the inference drawn in *Herrington* should be reversed. Denials should be treated as credible when the stolen goods cannot be found and the accused did not have an opportunity to rid themselves of the goods they were accused of taking.

The Court should deny summary judgment because defendants have not shown that Mr. Harris had probable cause for his actions.

**C.    Summary Judgment Should Be Denied for False Arrest/False Imprisonment.**

An action for false imprisonment arises for unlawfully causing a depravation of another's liberty against his will and also for knowingly giving false information to a law enforcement officer which leads to another's arrest. *Carter v. Aramark Sports and Entertainment Services, Inc.*, 835 A.2d 262, 284, 153 Md. App. 210 (2003).

In *Montgomery Ward v. Wilson*, 664 A.2d 916, 926, 339 Md. 701 (1995), the court said the tort of false imprisonment may lie against a private party who procures another's warrantless arrest without probable cause by falsely informing the police officer that the factual basis exists for the arrest. The private party may also incur liability for false imprisonment for wrongfully detaining an individual while waiting for the police to make a formal arrest. *Id.*

Defendants are liable for false arrest/false imprisonment on both prongs of the test. A jury could find from the facts that as early as when he went to the back room to review the videotape, Mr. Harris realized he was in possession of the ring he was accusing plaintiffs of stealing. Based

14

on that finding of fact, a jury could determine that Mr. Harris gave the police false information while knowing it was false.

False imprisonment does not require deprivation of liberty by force. Verbal threat of force is sufficient. *Carter*, 835 A.2d at 285. A jury could find that the defendants deprived plaintiffs of their liberty. Threats to call the police, the presence of a security guard between the plaintiffs and the door at all times[5] and knowledge by the plaintiffs that their accuser was wearing a gun together create the inference that plaintiffs were not free to leave the store.

The *Carter* court upheld summary judgment for the defendants where the plaintiff was an employee being questioned by her employer. She remained in the room where she was being questioned after everyone else walked out. *Carter*, 835 A.2d at 285. Unlike Ms. Carter, plaintiffs were not left alone. They were under guard at all times.

A legally sufficient claim of false imprisonment does not require the plaintiff to test the threat of force to determine whether it would be exercised. *Manikhi v. Mass Transit*, 758 A.2d 95, 360 Md. 333 (2000).

The Court should deny defendants' motion for summary judgment on the false arrest/false imprisonment count.

**D.    Summary Judgment Should Be Denied for Malicious Prosecution**.

Defendants correctly state the elements of the tort of malicious prosecution. Among those elements are "a criminal proceeding instituted **or continued** by the defendant against the plaintiff." Memorandum at 10. (Emphasis added) Defendants state that they could not have initiated the

---

[5]    The security guard separated Mr. Thomas from his wife when she was in the store. [Declaration of Tony Lamont Thomas, ¶ 26]

criminal process because the criminal prosecution was based on a police investigation. They fail to take into account that the police based the arrest solely on the complaint by Mr. Harris. All other evidence gathered in their investigation pointed to plaintiffs' innocence.

The facts show that even if defendants did not initiate the criminal prosecution, they certainly continued it. Mr. Harris failed to reveal to law enforcement authorities that the ring he accused the plaintiffs of stealing was not missing. The Court should draw an inference of continuation of the criminal prosecution from the prosecutor's offer made to plaintiffs several times before trial to drop the criminal charges if the plaintiffs agreed they would not sue the Store for false arrest. [Declaration of Eric David, ¶¶ 63-64]

*Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *cert. granted and vacated on other grounds sub nom. City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985), *aff'd after reconsideration*, 796 F.2d 1307 (10th Cir. 1986), involved a similar factual situation. The Court called "outrageous" the refusal of the defendant store and its security guard to drop shoplifting charges they knew to be groundless while they bargained for a release of civil liability. 749 F.2d at 1431.

Under Maryland law, the "malice" element of a malicious prosecution case may be inferred from lack of probable cause alone. *Okwa v. Harper*, 360 Md. 161, 133, 757 A.2d 118, 130 (2000). Ill will or spite is not necessary to prove malice. The malice required for a malicious prosecution claim consists only of a wrongful or improper motive for prosecuting someone. *Montgomery Ward v. Wilson*, 664 A.2d 916, 924, 339 Md. 701 (1995).

The Court should deny summary judgment on the malicious prosecution count.

**E.    Radcliffe Jewelers Has Failed To Prove It Lacks Capacity To Be Sued.**

Radcliffe Jewelers states without any supporting factual evidence that the case against the Store must be dismissed because Radcliffe Jewelers is only a trade name and not an entity with the capacity to be sued. The Store certainly has not proven its assertion such that it is entitled to summary judgment. To do so would require the presentation of evidence pursuant to Fed. R. Civ. P. 56(e).

Plaintiffs' investigation led to its belief that Radcliffe Jewelers was the proper defendant. Even if it is not and the real party in interest is a different entity, Radcliffe Jewelers has accepted service of process, answered the Complaint against it and participated in this litigation, even to the extent of filing a summary judgment motion.

Plaintiffs would be happy to move to substitute another entity for Radcliffe Jewelers or move to change the caption to reflect the correct name of the entity owning the Radcliffe Jewelers Store so long as defendants inform plaintiffs the name of the proper entity to be substituted. Radcliffe Jewelers appears deliberately to be avoiding mentioning the name of the entity in order to keep plaintiffs from gaining the information needed to correct the name of the defendant. See Memorandum at 2 ("Plaintiffs, entered a jewelry store trading as Radcliffe Jewelers.")

The request to dismiss Radcliffe Jewelers should be denied.

WHEREFORE, plaintiff requests the following relief:

A.    That this Court dismiss the following counts of plaintiffs' Complaint:

Count III - Negligent Supervision, Training and Maintenance of Personnel, and

Count V - Defendant Harris' Negligence.

B.    That this Court deny the summary judgment motion by defendants Radcliffe Jewelers and Eric Harris as to the following counts of plaintiffs' Complaint:

Count IV - Malicious prosecution (Criminal), and

Count VI - False arrest and false imprisonment.

C.    And for such other and further relief as this Court may find just and equitable.

Respectfully submitted,


_____/s/_____
Ted J. Williams 414758
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 434-8744

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC DAVID, *et al.*,                     )
                                          )
      Plaintiffs,                    )
                                          )
      v.                             ) Civil Action No. 02-CV3573 (WMN)
                                          )
RADCLIFFE JEWELERS, *et al.*,             )
                                          )
      Defendants.                    )

**ORDER**

This matter having come before the Court on the Motion for Summary Judgment by defendants Radcliffe Jewelers and Eric Harris, an opposition having been filed of the plaintiffs, the matter read and considered, and the Court having found the existence of material facts in dispute, it is hereby, this _____ day of _____, 2004,

      **ORDERED**, that upon request of the plaintiffs, Counts III and V of plaintiffs' Complaint against Radcliffe Jewelers and Eric Harris are dismissed, and it is further.

      **ORDERED**, that otherwise the motion by Radcliffe Jewelers and Eric Harris for summary judgment be, and it is hereby, DENIED, and trial will be held on the following counts of plaintiffs' Complaint against defendant Radcliffe Jewelers and Eric Harris:

      Count IV - Malicious Prosecution (Criminal), and

      Count VI - False Arrest and False Imprisonment.

                          _____
                          William M. Nickerson
                          U.S. DISTRICT JUDGE

Service copies next page:

Copies to:

Ted J. Williams, Esquire
1200 G Street, NW
Suite 800
Washington, D.C. 20005

James J. Nolan, Jr., Esquire
Assistant County Attorney
400 Washington Avenue
Towson, MD 21202

Robert L. Hebb, Esquire
Semmes, Bowen & Semmes
150 West Pratt Street
Baltimore, MD 21201

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Opposition to Motion for Summary Judgment by Defendants Radcliffe Jewelers and Eric Harris and proposed Order, were served by first class mail, postage pre-paid this 29th day of April, 2004 upon James J. Nolan, Jr., Esquire, Assistant County Attorney, 400 Washington Avenue, Towson, MD 21202, and upon Robert L. Hebb, Esquire, Semmes, Bowen & Semmes, 150 West Pratt Street, Baltimore, MD 21201.


_____/s/_____
Ted J. Williams

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**


ERIC DAVID, et al                         *

                                          *          **Case No.  WMN-02-3573**

            **vs.**                       *
                                      ******
**R.M. HARRISON, et al.**                 *


### NOTICE OF FILING OF LENGTHY EXHIBITS


Plaintiffs' Opposition  to Defendants Radcliffe Jewelers and  Harrison's Motion For

Summary Judgment's Exhibits A thru D exists only in paper format,  with a video tape..  It will be

filed with the Clerk's Office in paper format along with the herein mentioned video tape.

I certify that within 24 hours of the filing of this Notice, I will file and serve paper copies of

the document identified above.


<u>    April 29, 2004                              </u>          <u>                /s/              </u>
                                                              ⎯

<u>    Ted J. Williams 10557                        </u>
*Printed Name  Bar Number*

                                      <u>    1200 G Street, N.W., Suite 800      </u>
⎯                                     *Street Address*

                                      <u>    Washington, D.C. 20005              </u>
⎯                                     *City/State/Zip*

                                      <u>    202 434-8744        202 347-3378    </u>
<u>          </u>                        *Phone No.              Fax No.*


4