IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERIC DAVID, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 02-CV3573 (WMN) |
| | ) |
| RADCLIFFE JEWELERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' NUNC PRO TUNC OPPOSITION TO DEFENDANT HARRISON'S
MOTION FOR SUMMARY JUDGMENT**

Come now plaintiffs Eric David and Tony Lamont Thomas, by and through their counsel

Ted J. Williams, to oppose the motion by defendant Rashelle Harrison for summary judgment.[1]

The summary judgment motion seeks dismissal of all of plaintiffs' three counts against the

police officer as follows:

Count I - Violation of civil rights under 42 U.S.C. § 1983.

Count IV - Malicious prosecution.

Count VI - False arrest and false imprisonment.

This opposition does not address the actions against Radcliffe Jewelers and store employee

Eric Harris. A separate opposition is filed as to the contentions in their summary judgment motion.

**THE FIRST SUMMARY JUDGMENT MOTION AND THE SECOND**

**The First Motion and the Court's Memorandum Decision**

Prior to answering the Complaint, Officer Harrison filed a motion to dismiss or for

summary judgment, seeking to dismiss all counts against her. Because the Court considered

---

[1]/ On May 11, 2004 this Honorable Court issued an order allowing Plaintiffs to file this
original copy of their motion nunc  pro tunc.

evidence outside the pleadings, it treated the motion as one for summary judgment. In a July 7, 2003 Memorandum, this Court denied the motion as to the three counts in issue.

The Court identified the only issue in dispute as "whether a reasonable person in Defendant Harrison's position would have thought that she had probable cause to effect that arrest." July 7 Memorandum at 8. The Court said:

> Probable cause exists to support a warrantless arrest when "the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested." [citation omitted] In assessing the existence of probable cause, **district courts examine the totality of the circumstances known to the officers at the time of the arrest**. [citation omitted]

(Emphasis added) July 7 Memorandum at 8-9.

The Court stated that the record on which its decision was based was "sparse," consisting only of declarations from Lt. Randy Guraleczka and plaintiff David. Within the record, the Court found numerous facts that would undercut the reasonableness of any probable cause determination. July 7 Memorandum at 9.

Among those facts are the failure of a thorough search by the police officers to turn up the alleged missing ring, plaintiff David's statement that nothing on the videotape would support the conclusion that a ring was stolen, Officer Woodward's statements that indicated he did not believe plaintiffs should be arrested[2] and questioning by an unnamed officer as to why plaintiffs continued to be detained when the search turned up no evidence that plaintiffs had stolen a ring. July 7 Memorandum at 9-10.

---

[2]    The July 7 Memorandum states that Officer Woodward reviewed the videotape. The evidence contained with the current summary judgment motion and opposition reveal that Officer Woodward did not view the videotape.

2

**The Second Summary Judgment Motion**

Officer Harrison's second summary judgment motion, filed after conclusion of discovery, includes an Appendix[3] with 110 pages of evidence. The sole disputed issue is unchanged. The expanded factual record includes additional evidence that Officer Harrison arrested plaintiffs without probable cause. The facts are disputed, and on this record, the Court cannot find as a matter of law that Officer Harrison had probable cause to arrest plaintiffs. The second summary judgment motion should be denied.

Plaintiffs incorporate into this opposition, the facts and legal arguments they raised in opposing the first of Officer Harrison's summary judgment motions. The document, entitled Plaintiffs' Response to Defendants' Motion to Dismiss, and In the Alternative, for Summary Judgment, was filed February 14, 2003 and includes the Declaration of Eric David. A copy of the original Declaration of Eric David, which was attached to the original response to the first motion, is included here for convenience as **Exhibit A**.

Plaintiffs proffer additional evidence in the form of the Second Declaration of Eric David (which mostly disputes defendants' assertions not made in the first summary judgment motion), as **Exhibit B**, and the Declaration of Tony Lamont Thomas as **Exhibit C.** Plaintiffs also submit

---

[3]       Reference to the evidence supporting Officer Harrison's motion is made by identifying the document and the page number in the Appendix.

a copy of the videotape for the Court's review[4] as **Exhibit D**. The Court can see for itself that the videotape exonerates the plaintiffs.

The new evidence demonstrates that the ring plaintiffs were accused of stealing by ring salesman Eric Harris was never even missing but was in the possession of Mr. Harris at all times. The information given at the scene to Officer Harrison by Mr. Harris would have permitted her to deduce that fact had she paid attention to what she was being told.

Officer Harrison's second motion relies to a large extent on statements expressly controverted by plaintiffs. To the extent Officer Harrison's evidence is disputed, it cannot support entry of summary judgment against plaintiffs. While Officer Harrison asserts that videotape was inconclusive on the subject of plaintiffs' guilt, the Court has evidence that the videotape conclusively shows that neither plaintiff stole a ring.

Officer Harrison's new evidence includes statements by several law enforcement personnel that they believe Officer Harrison had probable cause to make the arrest. Each such statement is flawed. None of them are based on the totality of the circumstances known to Officer Harrison at the time of the arrest. This Court should reject all the proffered statements in support of Officer Harrison's motion that opine on probable cause

---

[4] After the arrest, the original videotape reviewed by Officer Harrison was taken by the police as evidence. [Crime Report, App. 4] Judge G. Darrell Russell of the District Court of Maryland ordered the videotape enhanced to show only the cameras in the Diamond Section for the State Attorney for use at trial, and he ordered copies made for counsel for the defendants in the criminal case (plaintiffs in the instant case). [Statement of Eric Harris, App. 8; Second Declaration of Eric David, ¶ 42]

## THE NEWLY PRESENTED EVIDENCE

**The Ring Was Never Missing**

The ring was never missing. It was in the possession of Mr. Harris at all times. The police report prepared by Officer Harrison immediately after the arrest states in part as follows:

> Mr. Thomas looked at the ring and handed it back to Mr. Harris. Mr. David then directed Mr. Harris attention to a display case to the left of Mr. Thomas and asked Mr. Harris how much the rings in that display case cost. Mr. Harris quoted Mr. David a price and then directed his attention back to the display case **to return the ring that Mr. Thomas had handed back to him when he noticed one of the slots were empty.**

[Crime Report, App. 2 & 3] (Emphasis added) In her motion Officer Harrison relies largely on information she received from Mr. Harris that the tray of rings sitting on top of the counter was completely full when he took the tray of rings out of the display case and put it on top of the counter, and at the time he accused the plaintiffs of stealing the ring there was one empty slot. [Crime Report, App. 3; Deposition of Rashelle M. Harrison, App. 48]

According to Officer Harrison's crime report quoted above, when Mr. Harris accused plaintiffs of stealing a ring, he was holding in his hand the very ring that was meant to be placed in the empty slot. Since he was holding in his hand the ring that belonged in the empty slot, the ring could not have been missing.

Mr. Thomas confirms the police report that Mr. Harris handed Mr. Thomas a ring from the display tray, the ring was returned and Mr. Harris was holding that ring at the time Mr. Harris began accusing the plaintiffs. Mr. Thomas did not realize at the time that the ring he was accused of stealing was the ring in Mr. Harris' hand. [Declaration of Tony Lamont Thomas, ¶¶ 18-20]

The evidence available to Officer Harrison at the scene of the jewelry store, when viewed in the light most favorable to the plaintiffs, is that a ring was never missing. Had Officer Harrison

5

paid close attention to what she was told (and what she wrote in her arrest report), she would have come to the conclusion that no crime had been committed.

Other evidence gathered since the arrest support the conclusion that the ring plaintiffs were accused of stealing was not missing from the store. Plaintiffs were arrested for theft of a ring described as a white gold band with a retail value of $1,200.00. [Crime Report, App. 1 & 4]

On the day following the arrest, Radcliffe Jewelers performed a complete inventory of wedding bands and determined that the white gold band reported stolen was **not** missing and the only ring missing was a platinum wedding band with a platinum center and a ridged gold edge valued at $924.00. [Statement by Eric Harris, App. 6] Harris failed to inform the police that the ring reported to be stolen was not missing. [Eric Harris Deposition, App. 29B]

**Plaintiffs' Depositions**

In a footnote, the motion states that plaintiffs' insisting that police be called makes sense "only" as suggesting plaintiffs were trying to set up the police. Memorandum In Support of Defendant Harrison's Motion for Summary Judgment ("Supporting Memorandum"), at 6. For summary judgment, the Court should discount a characterization of evidence so slanted toward the movant. The Court should consider that plaintiffs were employed as financial advisors. [Declaration of Eric David, ¶¶ 2-5]  An arrest for theft could be devastating to their careers. [Second Declaration of Eric David, ¶¶ 2-3; Declaration of Tony Lamont Thomas, ¶¶ 2-3] The plaintiffs contend that they believed police involvement would clear their names. [Declaration of Eric David, ¶ 35]

The facts show that plaintiffs didn't demand to call the police until after Mr. Harris several times threatened that he would call the police if they didn't return the ring. Mr. Thomas testified

that after the threat was made five, six or seven times, the plaintiffs in response finally told Mr. Harris to call the police. [Deposition of Tony Lamont Thomas, App. 16, pp. 47-48]

Officer Harrison asserts that no evidence exists to dispute Mr. Harris' statement that the ring tray on the counter was completely full. Supporting Memorandum at 7. As discussed earlier, if the ring tray was completely full when removed from the counter and only one slot was empty when plaintiffs were accused, that would prove that no ring was missing because Mr. Harris held the ring removed from that slot in his hand.

Still the number of vacant slots in the tray remains in dispute. Mr. David states he does not believe the ring tray was full when it was removed from inside the display case. [Declaration of Eric David, ¶ 19; Second Declaration of Eric David ¶ 4] The Court should treat the number of open slots in the ring tray as an issue to be decided by the jury.

**Eric Harris Deposition**

Officer Harrison's motion includes a written statement by Mr. Harris said to have been prepared the day after the arrest and excerpts from the Deposition of Eric Harris which include a number of specific assertions picturing the plaintiffs as being extremely suspicious characters. Mr. Harris accuses the plaintiffs, particularly Mr. David, of making suspicious statements, wearing inappropriate clothing, attempting to hide from the security cameras and several times attempting to deliberately distract Mr. Harris. He also states that two women came into the store and hugged the plaintiffs. The plaintiffs have denied each of those assertions, point by point. See Second Declaration of Eric David and Declaration of Tony Lamont Thomas.

Not only should the Court discard the assertions of Mr. Harris described above because they are disputed, but the Court should discard them as irrelevant to probable cause because the record does not demonstrate that Mr. Harris conveyed those specific assertions to Officer Harrison.

They are not stated in her arrest report, and she did not recite them in her deposition[5]. [Crime Report, App. 2-4 and Deposition of Rashelle M. Harrison, beginning at App. 39. See, *i.e.*, App. 48] Probable cause is based on the circumstances known to the arresting officer.

Although those provocative statements were not conveyed to Officer Harrison, they may have been the reason for the arrests. The facts show that the decision to arrest was made, not by Officer Harrison, but by her shift commander, Lt. Randy Guraleczka. It is undisputed that during the entire set of events at issue in this lawsuit, Lt. Guraleczka never spoke with Officer Harrison. But Lt. Guraleczka did speak on the phone with Mr. Harris. In his deposition, Mr. Harris described his conversation with Lt. Guraleczka as follows:

> He asked me what had happened, and I explained to him the theft that had occurred, and **I gave him details**."

(Emphasis added) [Deposition of Eric Harris, App. 33] In construing the facts in the light most favorable to the plaintiffs, the Court should presume that Mr. Harris told Lt. Guraleczka the provocative details of his testimony not revealed to Officer Harrison.

While Mr. Harris did not tell Officer Harrison that Mr. David was trying to block security cameras and inquiring about the price of pictures on the wall, an inference can be drawn from the evidence that he could have made those statements to Lt. Guraleczka. There is no evidence that Officer Harrison either was told about or witnessed two females come into the store from outside and hug the plaintiffs while the investigation was underway. However, the "details" given by Mr. Harris to the shift commander could have included such information, not known to Officer Harrison.

---

[5]    Officer Harrison did say she heard a male voice at the scene mention Victoria Secret, but her testimony did not identify the speaker as one of the plaintiffs. [Deposition of Rashelle M. Harrison, App. 72]

One of the most compelling reasons why there was no probable cause to arrest is the complete lack of opportunity plaintiffs had to secrete or rid themselves of a stolen ring while under the constant watchful eyes of video cameras and experienced police officers. Had two women hugged the plaintiffs at the scene, that would have provided an opportunity to dispose of the ring. Whether such a hug happened and whether information about a hug was conveyed to Lt. Guraleczka are disputed issues of fact in this litigation. Therefore, they are for the jury to decide.

**Rashelle Harrison Deposition**

Officer Harrison does **not** contend that she personally believed she had probable cause to arrest the plaintiffs after the police conducted a negative search. For that reason, she telephoned her supervisor, [Deposition of Rashelle M. Harrison, App. 62] and told him the evidence as she understood it. [Deposition of Rashelle M. Harrison, App. 63-64]

Although at the time of the arrest Officer Harrison did not know whether there was probable cause, she stated at her deposition, that for arrest she would not need physical evidence that the plaintiffs stole a ring. She would not need any evidence to arrest except the statement by Mr. Harris that there was a ring stolen. [Deposition of Rashelle M. Harrison, App.60- 61 & 69] Her testimony is contrary to the law which bases probable cause on the totality of the circumstances known to the officers at the time of the arrest.

Officer Harrison several times called the videotape "inconclusive" and said it was not a factor in the determination to make the arrest. [Deposition of Rashelle M. Harrison, App. 53-54] However, her superior officers apparently considered her description of the contents of the videotape against the plaintiffs in making their probable cause assessment. [Deposition of Brian P. Kelly, App. 80, p. 10; Deposition of Lt. Randy Guraleczka, App. 89, p. 10, App. 93, p. 37]

In her deposition, Officer Harrison described an incident when one plaintiff may have handed something to the other, but at the deposition she was confused about the time sequence, whether the activity took place before the plaintiffs were accused or after they were accused when their gestures were an attempt to prove they didn't take a ring. [Deposition of Rashelle M. Harrison, App. 53-56]

Plaintiffs contend that the events shown on the videotape were not inconclusive but fully backed up the version of the facts they made known to Officer Harrison at the scene prior to her viewing the videotape. [Second Declaration of Eric David ¶¶ 25-29] Officer Harrison's testimony at her deposition does not reflect the information known to her at the arrest scene.

The Court will have the opportunity to review the videotape for itself to see if Mr. David's hand "went towards his pocket" but did not go in his pocket as Officer Harrison states [Deposition of Rashelle M. Harrison, App. 55 & 56], or if shows he kept both hands in his pocket until after he was accused and then his only actions were to show he did not possess a ring. [Second Declaration of Eric David, ¶¶ 28-29]

**Cpl. Brian Patrick Kelly Deposition**

Cpl. Kelly testified about the information he was given on the telephone by Officer Harrison and conveyed to Lt. Guraleczka. His deposition testimony supports the inference that Mr. Harris did not make specific assertions to Officer Harrison which painted the plaintiffs as particularly suspicious characters. [Deposition of Brian P. Kelly, App. 79, pp. 8-9]

Cpl. Kelly testified that he did not know whether the two plaintiffs left the store before they were searched by the police officers or even whether they left the area near the wedding ring display case, and he did not ask Officer Harrison whether they had. [Deposition of Brian P. Kelly, App. 80, pp. 11-13, App. 81, p. 15] Officer Harrison testified Mr. Harris told her the plaintiffs had

10

not left the area of the display cases. [Deposition of Rashelle M. Harrison, App. 50] The Court should infer that Officer Harrison's supervisors, who made the actual decision to arrest, did not consider that plaintiffs did not leave the jewelry counter where the ring was alleged to be missing, did not have any physical contact with anyone except store personnel and police and at all times were being watched by surveillance cameras and at least one experienced police officer. [Second Declaration of Eric David, ¶¶ 22, 30-33] This information known to Officer Harrison, but not considered by her superior officer, is powerful evidence that the police lacked probable cause to arrest the plaintiff.

Cpl. Kelly opined without evidence to support it that the plaintiffs could have swallowed the rings. [Deposition of Brian P. Kelly, App. 83, p. 23] The information known to Officer Harrison at the scene was to the contrary. Officer Harrison was aware of the level of scrutiny directed at plaintiffs the entire time they were in the ring department of the store. Their every move was taped by two surveillance cameras, and at least one highly experienced police officer was watching them at all times. They would not, without being noticed, have been able to swallow a ring or secret a ring on their bodies so that the ring could not be found during Officer Woodward's search. [Second Declaration of Eric David, ¶¶ 30-33; Declaration of Tony Lamont Thomas, ¶¶ 21-22]

Officer Harrison did not believe plaintiffs swallowed a ring. Cpl. Kelly's testimony was as follows:

Q.    Did Officer Harrison tell you she believed they swallowed the rings?

A.    No.

Q.    What did Officer Harrison tell you she believe happened to the rings?

A.    She did not know.

11

[Deposition of Brian P. Kelly, App. 83, pp. 23-24] The Court should infer from the fact that Officer Harrison did not know what happened to the ring that Officer Harrison did not think it more probable than not that the plaintiffs had stolen a ring.

**Deposition Testimony of Lt. Randy Guraleczka**

In his testimony, Lt. Guraleczka stated he relied for his probable cause decision not only on the information from Officer Harrison as conveyed to him by Cpl. Kelly but mostly on his telephone call with Mr. Harris. He said he did not want to hear the plaintiffs' side of the story (which Officer Harrison had heard) because "It is immaterial." [Deposition of Lt. Randy Guraleczka, App. 92 p. 23]

When asked whether he determined whether Mr. Harris and the police officers had ever lost sight of the plaintiffs, he said such information "did not have anything to do with probable cause." [Deposition of Lt. Randy Guraleczka, App. 92 p. 25] Lt. Guraleczka is wrong as a matter of law. Probable cause is based on the totality of the circumstances known to the officers at the time of the arrest, and an important part of the circumstances known to Officer Harrison was the lack of means the plaintiffs had to dispose of a ring, given their isolation and the thorough search.

**Deposition of Sgt. Terry DuBose**

The parties have located the unidentified police officer who questioned why plaintiffs were still being held when the search had turned up no evidence of theft. She is Sgt. Terry DuBose. She remembered that she responded to the store, but she had virtually no recollection of what happened while she was at the store. [Deposition of Sgt. Terry DuBose, App. 99, p. 15 & App. 101, p. 33] Therefore, even with the opportunity to expand evidence, the only evidence on this issue remains the statements reported by Mr. David as to the police officer's actions and words at the scene. [Declaration of Eric David, ¶¶ 53-55]

12

When asked a hypothetical question by plaintiffs' counsel about a theft of a ring from a jewelry store but without a search of the suspects, Sgt. DuBose said she would find probable cause. [Deposition of Sgt. Terry DuBose, App. 101, p. 30-31] When asked a follow-up question about what would have happened had there been a search, Sgt. DuBose said: "You don't loose (sic) your probable cause. Once you have it, you have it." [Deposition of Sgt. Terry DuBose, App. 101, p. 32] Sgt. DuBose, like Officer Harrison and Lt. Guraleczka, is wrong on the law. Probable cause is based on the totality of the circumstances known to the officers at the time of the arrest. Under the law, if a statement by a witness in the absence of other evidence would give a police officer probable cause to arrest, the officer must also take into account further evidence available at the time of the arrest that would make the crime unlikely to have occurred or the suspect unlikely to have committed the offense.

**Declaration of Officer Kyle Woodward**

Officer Woodward provided a brief declaration in support of the motion. Notably, his declaration did not deny or even shed any light on the statements attributed to him by Mr. David. [Declaration of Eric David, ¶¶ 58-59]  The declaration of Officer Woodward states:

> **Based on the statements of Eric Harris**, I believed then and I believe now that there was probable cause to arrest the suspect, since there had been a theft of a ring valued at over Five Hundred Dollars ($500.00), a felony.

(Emphasis added) [Paragraph 7 of Declaration of Officer Kyle Woodward, App. 104] That Officer Woodward may have believed there was probable cause for the arrest is contradicted by Mr. David's original declaration. [Declaration of Eric David, ¶¶ 58-59] Officer Woodward's view on probable cause is also disputed by Officer Harrison's testimony. When asked during her deposition whether she consulted with Officer Woodward about whether she had "enough to make an arrest," Officer Harrison said she asked his opinion on the case, and Officer Woodward told her to call

13

their supervisor and ask him. [Deposition of Rashelle M. Harrison, App. 62] The Court should draw a strong inference in favor of the plaintiffs based on Officer Harrison's statement that when she asked Officer Woodward for his opinion at the scene, he failed to tell her that he believed there was probable cause to arrest.

Officer Woodward's declaration said the arrest was proper pursuant to Baltimore County Police Department Field Manual, § 1-4.5.1, because one of the plaintiffs did not have proper identification. That section of the manual, as produced in discovery, makes the lack of identification relevant only when shoplifted goods are valued at less than $500.00. It would not apply here. [Second Declaration of Eric Harris, ¶¶ 40-41]

**Declaration of Ramunas Kligys**

Officer Harrison's motion included the declaration of Mr. Kligys, a Baltimore County police officer and the security officer on duty at the time of the arrest. The declaration included a written statement that Mr. Kligys said he prepared about an hour after plaintiffs were arrested. [Declaration of Ramunas Kligys, App. 105, ¶ 4]

The attached statement lists the "stolen item" as "FA-1972 Platinum Wedding Band; Loss Value $924.00, and says when plaintiffs were in the store Mr. Harris described the missing ring as platinum. [Declaration of Ramunas Kligys, App. 108] The description of the missing ring in Mr. Kligys' statement is at odds with the rest of the evidence before the Court. Mr. Harris reported to the police that the stolen ring was a white gold band with a retail value of $1,200.00. [Crime Report, App. 1 & 4], and the written report of Mr. Harris stated that only when a full inventory was performed the next day (April 7, 2001) was it discovered that a platinum wedding band was missing from the stock. [Statement by Eric Harris, App. 6]

The credibility of Mr. Kligys' entire statement is put into question because it contains information not known until the day after he said he wrote the statement.

Mr. Kligys said Mr. David brought up the subject of a Victoria's Secret case. [Declaration of Ramunas Kligys, App. 106] Both Mr. David and Mr. Thomas have denied that they made any mention of a Victoria's Secret case while in the store. Mr. Thomas denied he had ever heard of the case until it was a subject of depositions. [Second Declaration of Eric Harris, ¶¶ 34-36; Declaration of Tony Lamont Thomas, ¶ 27] As the statement is disputed, the issue of the truth of Mr. Kligys' statements is for the jury to decide.

Mr. Kligys also opined on the existence of probable cause and stated that there was probable cause based on the eyewitness statement of Mr. Harris. Mr. Kligys went on to say:

> This is no different from a bank robbery where the perpetrator is apprehended but does not have in his possession the money from the bank. Another analogy would be an armed robbery where the victim tells the police officer that he was robbed at gunpoint, identifies the perpetrator, but the weapon is not found on the perpetrator who threw it in a sewer or passed it off to someone else.

[Declaration of Ramunas Kligys, App. 106-107, ¶ 6]

The facts in this case, construed in the light most favorable to the plaintiff, include critical elements known to the arresting officer but not present in the two examples given by Mr. Kligys. Police would not find probable cause had an accused bank robber been apprehended still in front of the teller cage inside the bank without money, with a security guard and video camera watching him at all times and not previously having been in contact with any person other than bank employees and the police. The armed robbery suspect would not be arrested if it could be shown that he was under surveillance at all times and did not have an opportunity to throw a weapon in a sewer or pass it off to someone else.

**Declaration of Jason League**

Assistant State's Attorney Jason League based his opinion that probable cause existed on the surveillance videotape that he said "showed one of the Plaintiff's (sic) attempting to distract the attention of Eric Harris while he was showing rings to the other Plaintiff." [Declaration of Jason League, App. 110, ¶ 4] Mr. League is the only witness who perceived that the videotape showed a plaintiff attempting to distract Mr. Harris. The plaintiffs deny that there was any attempt to distract Mr. Harris. [Declaration of Eric David, ¶ 28; Declaration of Tony Lamont Thomas, ¶ 12; Second Declaration of Eric David, ¶¶ 16, 23-25] Officer Harrison, who also viewed the videotape, said she understood that Mr. Harris was distracted by a verbal question, not by an action which a videotape would show. [Deposition of Rashelle M. Harrison, App. 48] The Court will have an opportunity to view the videotape for itself.

16

Because Mr. League bases his probable cause opinion on a version of events not before this Court on summary judgment, the Court must reject his opinion.

Mr. League's account is also contradicted by the testimony of Mr. David that several times before trial the prosecutors offered to drop the theft charges if the plaintiffs agreed to sign a paper saying they would not sue the jewelry store for false arrest. [Declaration of Eric David, ¶ 63-64]

## LEGAL ARGUMENT

A.  **Based On All The Information Known To Officer Harrison, The Facts Are Disputed Whether She Had Probable Cause To Arrest.**

Officer Harrison's second motion for summary judgment is based on the proposition that in making a probable cause determination, a police officer may rely on the statements of store personnel at the time of making the arrest and may ignore other facts which are known or should be known to the officer pointing in the direction of innocence. The law is otherwise as the Court stated in its July 7 Memorandum.

In *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *cert. granted and vacated on other grounds sub nom. City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985), *aff'd after reconsideration*, 796 F.2d 1307 (10th Cir. 1986), Mr. Lusby purchased a pair of sunglasses at a convenience store. After he left the store, he returned to buy hairspray, holding the sunglasses in his hand. A security guard noticed that he went through the checkout line carrying sunglasses he did not pay for. The security guard made a citizens arrest. While being dragged to the back of the store, Mr. Lusby tried to get the attention of the cashier to whom he had just paid for the sunglasses.

The store called the police which relied entirely on the word of the security guard in handcuffing Mr. Lusby and taking him to jail "without interviewing witnesses or conducting any

17

inquiry to determine whether probable cause existed to arrest [him]. They relied entirely on Gent's word . . . . The officers made no independent investigation of the shoplifting, which would have shown that Vaughn Lusby had paid for the glasses." 749 F.2d at 1430. After the case traveled to the Supreme Court and back to the Court of Appeals, the police officers were found liable to Mr. Lusby under 42 U.S.C. § 1983 for violating Mr. Lusby's civil rights.

Just as the police in *Lusby*, in determining whether to make the arrest, should have considered the facts available to them in addition to the story by the security guard, Officer Harrison was required to consider the facts available to her that indicated plaintiffs had not stolen a ring. Those facts included her knowledge that Mr. Harris was holding in his hand the ring belonging to the empty slot in the tray, that the videotape did not support Mr. Harris' story, that the plaintiffs never left the area of the store where the rings were located and were not in physical contact with anyone except store personnel and police, that no ring was found despite a careful search by police, and that plaintiffs were at all times under a level of surveillance by video camera and an experienced police officer such that they could not secret a ring on their bodies (or swallow a ring) without being noticed. The summary judgment motion indicates that the decision to arrest plaintiffs was based solely on the word of Mr. Harris that plaintiffs stole a ring in the face of ample evidence to the contrary.

In *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252 (10th Cir. 1998), a decision by the district court to deny qualified immunity to two police officers was affirmed in a case in which police officers merely detained Ms. Baptiste and conducted a patdown search when there was sufficient independent evidence, including a videotape, that Ms. Baptiste had not stolen a ring. The police eventually released Ms. Baptiste after the patdown search. Here, the plaintiffs do not challenge the search conducted by Officer Woodward at the jewelry store. They contend the result

18

of the search is one of the factors Officer Harrison was required to take into account before she put the plaintiffs under formal arrest.

In *Baptiste*, the police officers argued that the statements made to them by the store security guards were sufficient to establish probable cause. The district court held that the police were required to consider the videotape and other evidence that Ms. Baptiste had not stolen a ring and could not rely on the word of the store employees alone.

As Officer Harrison was instructed to make the arrest by her shift commander, this Court must take into account that the shift commander thought it did not matter for probable cause analysis that plaintiffs had been within sight of Mr. Harris and the police the entire time, and that the shift commander considered plaintiffs' side of the story "immaterial." [Deposition of Lt. Randy Guraleczka, App. 92 p. 23]

In *Baptiste*, like this case, the police asserted that the videotape was ambiguous[6]. The Court found that the videotape did not suggest theft, and it did not contradict Ms. Baptiste's version of the events. Since the motion before the Court is for summary judgment, this Court must view the videotape in the light most favorable to the plaintiffs in determining whether Officer Harrison had probable cause to arrest plaintiffs.

Said the Court in *Baptiste*, "police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." 147 F.3d at 1259. In addition to the videotape, the Court must consider the other exculpatory evidence readily available to Officer Harrison such as her report that when Mr. Harris accused plaintiffs, he was holding a ring in his hand ready to return it to the

---

[6]        Officer Harrison used the word "inconclusive."

open slot in the ring tray, plaintiffs' lack of opportunity to rid themselves of a stolen ring and the negative search.

*Baptiste* relies in part on *Clipper v. Takoma Park, Maryland*, 876 F.2d 17, 19-20 (4th Cir. 1989) where probable cause was found not to exist for an arrest for bank robbery when the police ignored readily available exculpatory evidence.

Among the evidence ignored in *Clipper* were bank surveillance photographs. Mr. Clipper contended that the photographs conclusively established he was not the robber, and the photographs were introduced at trial. As was done in *Clipper*, the jury here should have an opportunity to view the videotape evidence to determine whether it was "inconclusive" as Office Harrison asserts or conclusively exonerates plaintiffs. See Second Declaration of Eric David, ¶ 25.

Officer Harrison relies on *Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743, 754 (5th Cir. 2001) for the proposition that an officer may form probable cause "where the officer interviews an eye witness to the alleged crime." But the *Morris* Court states that a police officer is entitled to rely solely on an eyewitness only absent other facts that give reason to question the complainant's account, *Id.*, and it distinguishes the facts in *Morris* from other cases in which the police officer "ignored evidence" which would have exculpated the suspect. 277 F.3d at 755, note 11.

Officer Harrison says that her superiors "confirmed her belief" that she had probable cause to make the arrest. Supporting Memorandum at 29. The facts, construed in the light most favorable to the plaintiff, are that when Officer Harrison telephoned her superior officer, neither she nor Officer Woodward believed she had probable cause to make the arrest.

Contrary to Officer Harrison's assertion, the after-the-fact opinions in the deposition of Sgt. DuBose and the declaration of Office Woodward, do not negate plaintiffs' ample evidence that at the time of the arrest neither officer believed probable cause existed. The conflict in the before and after opinions of the two police officers manifest a factual dispute for the jury to resolve.

Office Harrison asks this Court to find probable cause even if other police officers concluded that probable cause did not exist. While evidence of the opinions of other police officers does not "preclude" an ultimate finding of probable cause, Supporting Memorandum at 29, it does operate to raise a disputed issue of fact which bars summary judgment. *Sarantakis v. Village of Winthrop Harbor*, 969 F.Supp. 1095, 1101 (N.D. Ill. 1997), cited by Officer Harrison says that a court may decide the issue of probable cause only when there is no dispute over material facts. In this case, two police officers more experienced than Officer Harrison[7] present at the scene made statements that raise the inference that they did not believe there was probable cause.

Officer Harrison would have this Court believe that the facts in *Fuller v. M.G. Jewelry*, 950 F.2d 1437 (9th Cir. 1991) were similar to those here. In *Fuller*, a ring was discovered missing only after three women left the jewelry store and continued shopping. Later, when the jewelry merchant saw the women in the mall near the store, he asked one of them to return to the store. The woman then ran into a bathroom, asked the others in line for the stall to leave because she had to throw up, appeared to be choking and gagging to make herself throw up and then suddenly seemed to get better and left the bathroom. Unlike the *Fuller* case, the plaintiffs never left the store or even left an isolated area inside the store, and they had no physical contact with anyone except store personnel and police, and they were under constant surveillance. Unlike in *Fuller*, plaintiffs were

---

[7]    Officer Harrison admits her inexperience in handling shoplifting cases. [Deposition of Rashelle M. Harrison, App. 60]

not seen choking and gagging to attempt to swallow a ring. There is no evidence at all that the plaintiffs made any effort to dispose of a ring.

The *Fuller* court agreed with the plaintiffs that the police officers had a duty to conduct an investigation and not accept at face value the statement by the complaining witness. The court found probable cause because the police in that case did investigate further. Police took the statement of a second employee, interviewed the suspect and her companions and also interviewed the woman who said she saw the plaintiff attempt to vomit in the rest room. Reliance on the facts found during that full investigation was held sufficient. 950 F.2d at 1444.

Plaintiffs agree that Officer Harrison did conduct a sufficient investigation to make a probable cause determination. Supporting Memorandum at 31. The problem is that in making the arrest, she (and her supervisors) ignored all the exculpatory evidence. A reasonable person in Officer Harrison's position considering all the available evidence would not believe plaintiffs had stolen a ring.

This Court once again should hold that Officer Harrison has not demonstrated she had probable cause to arrest and should hold that Officer Harrison has not demonstrated that she is entitled to qualified immunity.

**B.     Officer Harrison Is Not Entitled To Dismissal Of The State Law Claims.**

Officer Harrison's second summary judgment motion does not differ materially from her first in her arguments as to malicious prosecution, false arrest, false imprisonment and state statutory immunity. For the same reasons as stated in the Court's July 7, 2003 Memorandum, the motion should be denied as to the state law counts. July 7 Memorandum at 10-11.

The Court should deny summary judgment to Officer Harrison on all three counts.

WHEREFORE, plaintiff requests the following relief:

A.    That this Court deny the motion for summary judgment in its entirety.

B.    And for such other and further relief as this Court may find just and equitable.

Respectfully submitted,

_____/s/_____
Ted J. Williams 414758
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 434-8744
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC DAVID, *et al.*,                    )
                                         )
            Plaintiffs,                  )
                                         )
      v.                                 ) Civil Action No. 02-CV3573 (WMN)
                                         )
RADCLIFFE JEWELERS, *et al.*,            )
                                         )
            Defendants.                  )

**ORDER**

This matter having come before the Court on Defendant Harrison's Motion for Summary Judgment, an opposition having been filed thereto, the matter read and considered, and the Court having found the existence of material facts in dispute, it is hereby, this _____ day of _____, 2004,

**ORDERED**, that Officer Harrison's motion for summary judgment be, and it is hereby, DENIED in its entirety.

_____
William M. Nickerson
U.S. DISTRICT JUDGE

Service copies next page:

Copies to:

Ted J. Williams, Esquire
1200 G Street, NW
Suite 800
Washington, D.C. 20005

James J. Nolan, Jr., Esquire
Assistant County Attorney
400 Washington Avenue
Towson, MD 21202

Robert L. Hebb, Esquire
Semmes, Bowen & Semmes
150 West Pratt Street
Baltimore, MD 21201

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiffs' Opposition to Defendant Harrison's Motion for Summary Judgment, and exhibits, and proposed Order, were served by electronic filings first class mail, postage pre-paid this _11__ day of May, 2004 upon James J. Nolan, Jr., Esquire, Assistant County Attorney, 400 Washington Avenue, Towson, MD 21202, and upon Robert L. Hebb, Esquire, Semmes, Bowen & Semmes, 150 West Pratt Street, Baltimore, MD 21201.


_____/s/_____
Ted J. Williams

3