IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC DAVID, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.:  WMN 02-CV3573 |
| RADCLIFFE JEWELERS, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
BY DEFENDANTS RADCLIFFE JEWELERS AND ERIC HARRIS**

The Defendants, Radcliffe Jewelers ("Radcliffe") and Eric Harris, by their attorneys, Robert L. Hebb and Semmes, Bowen & Semmes, pursuant to the Federal Rules of Civil Procedure, hereby submit the following Reply to Plaintiffs' Opposition to Motion for Summary Judgment by Defendants.

**I. Introduction**

Defendant Radcliffe and Harris moved for summary judgment on all claims asserted against them by the Plaintiffs.  Specifically, Defendants sought judgment on the alleged intentional and negligence torts.  Plaintiffs have agreed to dismiss the negligence claims. See Plaintiffs' Opposition to Motion for Summary Judgment by Defendants Radcliffe Jewelers and Eric Harris (hereinafter "Plaintiffs' Opposition") at p. 2.  Plaintiffs continue to pursue false arrest, false imprisonment and malicious prosecution claims against Harris, individually, and Radcliffe "based upon *respondeat superior*".

Defendants submit this reply to Plaintiffs' Opposition as it pertains to these intentional torts.
A) Plaintiffs have materially changed the posturing of their respective opinions by proffering new

declarations with facts and allegations that were not previously stated within their respective discovery responses, including deposition testimony. The Plaintiffs are now arguing for the first time that Mr. Harris held the missing ring in his hand and, thereby, argue that Mr. Harris stole the ring. The newly executed declarations must be precluded from review and/or disregarded as sham evidence.

      B) The Defendants, Radcliffe and Harris had probable cause to believe that a theft occurred, and are immune from liability pursuant to the Maryland Shopkeepers Statute, Md. Cts. & Jud. Proc. Code Ann. Sec. 5-402 (2002).

      C) The Plaintiffs have voluntarily dismissed the negligence causes of action against Harris and Radcliffe. The only remaining issues pertain to intentional torts for the alleged conduct of Mr. Harris. The Plaintiffs rely upon the theory of respondeat superior to find liability against Mr. Harris' employer, Radcliffe. Radcliffe cannot not be liable for allegations of intentional conduct of an employee if the alleged conduct is outside of the scope of employment and does not further the business of the employer.

**II. Reply**

Plaintiffs are correct when they identify probable cause as the principal issue to be resolved pertaining to Defendants' Motion for Summary Judgment; they are incorrect, however, in characterizing the issue as merely "factual." <u>See</u> Plaintiff's Opposition at p. 3. The threshold question of what facts are sufficient to show probable cause is one of law for the court. <u>Banks v. Montgomery Ward & Co.</u>, 212 Md. 31, 42, 128 A.2d 600. Therefore the court may consider the undisputed facts and determine whether probable cause existed.

**A. Plaintiffs should not be permitted to offer the newly executed Declarations, inconsistent with prior testimony, in an effort to support their new theory of the case**.

The facts set forth in Defendants' Memorandum in support of their Motion establish that Mr. Harris had probable cause to suspect that a theft had been committed by the direction of the Plaintiffs. In order to rebut the existence of probable cause, it was necessary for Plaintiffs to concoct a scenario of facts implicating Mr. Harris in an intentional wrongdoing, in turn necessitating the voluntary dismissal by Plaintiffs of their negligence claims. Further, in an effort to rebut the facts establishing probable cause, Plaintiffs submit newly sworn declarations, executed after the depositions of both Plaintiffs, Mr. Harris and other witnesses had been taken. See Second Declaration of Eric David, attached as Exhibit B to Plaintiffs' Opposition to Defendant Harrison's Motion for Summary Judgment; see Declaration of Tony Lamont Thomas, attached as Exhibit C to Plaintiffs' Opposition to Defendant Harrison's Motion for Summary Judgment. These affidavits should be excluded from consideration, and Plaintiffs' claims should be summarily dismissed.

### 1. "Sham Evidence"

In Janey v. N. Hess Sons, Inc., 268 F.Supp.2d 616 (D. Md. 2003), the court disregarded the affidavit of a witness procured by a plaintiff in an attempt to defeat a defendant's motion for summary judgment. Id. at 625. In Janey, the plaintiff, a shoe salesman, sought a transfer to another store because the store in which he worked was going out of business. Id. at 618. The plaintiff did not receive a transfer. The plaintiff in Janey brought a claim alleging that defendant failed to transfer plaintiff to another store because plaintiff was African American. Id. at 624.

During discovery, plaintiff's supervisor testified *generally* at a deposition that he believed the other shoe stores had vacancies during the liquidation of the shoe store in which plaintiff worked. Id. at 618. Later in an affidavit, however, the supervisor testified that plaintiff requested a transfer on December 13, 1999 and that he had personal knowledge that the other shoe stores were looking

to fill vacancies on December 13, 1999. Id. at 618-19. The court noted that "the date in [the supervisor's] affidavit, December 13, 1999, . . . suddenly correlates with the time period after December 10, 1999, which is the cut-off date after which [plaintiff's] claims are timely." Id. at 625, n. 7. The newly executed affidavit sought to establish a theretofore missing element in the discrimination claim, that the defendant had an open position for which the plaintiff applied or sought to apply. The court disregarded the sham affidavit. Id. at 625.

The court cited a Fourth Circuit case that stated "'[i]f a party who had been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" Halperin v. Abacus Technology Corp., 128 F.3d 191, 198 (4th Cir. 1997) abrogated on other grounds by Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999)(quoting Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984)). The court found that the new affidavit of the supervisor precisely stating a time frame contradicted the supervisor's former testimony which provided only a general notion that the other shoe stores had vacancies they were looking to fill. Id. at 625. As a result of disregarding the affidavit, the court dismissed plaintiffs failure-to-transfer claim because it failed to establish that there were other open positions. Id.

 2. *Plaintiffs have similarly executed new Declarations asserting new and/or inconsistent facts.*

In the instant matter, both Eric David and Tony Lamont Thomas have executed new, sworn declarations in an attempt to support their new theory of the factual circumstances surrounding their arrest. Their new theory now has Mr. Harris, who has committed his life's career to law enforcement (see Memorandum in Support of Defendants' Motion for Summary Judgment at pp. 6-7 and accompanying Exhibit), committing an intentional misrepresentation and lying to other police

officers. See Plaintiffs' Opposition at pp. 9-10.  Specifically, the new, sworn Declarations help Plaintiffs surmise that "Mr. Harris was holding a white gold ring in his hand, getting ready to return it to the slot in the tray where it belonged, when momentarily distracted by a question, he looked down at the tray, saw one slot open and *forgot that he was holding in his hand the ring belonging in that slot*.  See Plaintiffs' Opposition at p. 9 (emphasis added).  Plaintiffs' conjecturing further provides: "At some point Mr. Harris must have realized that the ring was not missing . . . [and] before he returned from viewing the videotape, Mr. Harris realized he had the ring in his possession the whole time."  See Plaintiffs' Opposition at p. 10.  This posturing of the facts is completely original and heretofore unmentioned by either Plaintiff in answers to interrogatories and deposition testimony.  Furthermore, in an attempt to defeat summary judgment on the false arrest/false imprisonment claims, Plaintiffs new derivation of the facts asserts that a security guard was present "between the plaintiffs and the door *at all times* . . . ."  See Plaintiffs' Opposition at p. 15.  In support of these new theories, Plaintiffs submit the recently executed Declarations.

Tony Lamont Thomas' newly executed declaration provides that there was not enough time for Mr. Thomas to take a ring from the display tray in front of him while Mr. Harris' attention was directed towards Mr. David, who had asked a question.  See Thomas Declaration at ¶¶ 16-17.  This statement helps support Plaintiffs' new theory by having Mr. Harris distracted long enough to "forget he was holding a ring," but not long enough to allow Mr. Thomas take a ring unnoticed.  The specificity of this statement does not appear in the deposition testimony of Mr. Thomas.

Further, the Declaration of Tony Lamont Thomas provides that a security guard stood between the Plaintiffs and the exit "almost the entire time."  See Thomas Declaration at ¶ 30.  In fact, Tony Lamont Thomas never testified to this during his deposition, but instead explained that the security guard made "small talk" about policy officers and "their retirement plans."  See Deposition

of Tony Lamont Thomas, attached hereto as Exhibit 1, at pp.94-97.  Mr. Thomas explained that the security guard "was standing behind us or like in between us, kind of, around us, but he wasn't in front of us, he was close by us." <u>Id.</u> at 96.  Mr. Thomas never unequivocally stated, as he has in his new Declaration, that the guard stood "between [the plaintiffs] and the exit almost the entire time." <u>See</u> Thomas Declaration at ¶ 30.

Further, Plaintiffs cite the Second Declaration of Eric David and the prior deposition testimony of Eric David for the same proposition that the guard stood between the plaintiffs and the exit almost the entire time.  <u>See</u> Plaintiffs' Opposition at p. 7 (citing Second Declaration of Eric David at ¶ 39 and Deposition of Eric David at p. 86).  In fact, the deposition testimony and the new Declaration do not even support this allegation.  The Second Declaration of Eric David at ¶ 39 states: "I had every reason to believe that I was not free to leave the store after I was accused of stealing the ring."  <u>See</u> David Declaration at ¶ 39.  Nowhere in the Second Declaration does Mr. David say the guard stood between the Plaintiffs and the exit.  Additionally, Mr. David testified at deposition that for some time during the occurrence the security guard "sat on the other side of the counter."  <u>See</u> Deposition of Eric David, attached to Defendants' Motion for Summary Judgment as Exhibit 1, at pp. 86-88.  Neither Mr. David's prior testimony nor his new testimony support the contention that the security guard blocked the Plaintiffs from the exit.

Finally, and perhaps the most blatant attempt to create a "material question of fact" and defeat summary judgment, Plaintiffs' newly executed Declarations are used to rebut facts established by Defendant Harris' deposition testimony.  It is explained: "Plaintiffs have expressly denied each and every one of the allegations in the second and third paragraphs of page 7 of the Memorandum." <u>See</u> Plaintiffs' Opposition at p. 8.  At page 7 in Defendants' Memorandum, Defendants establish, through the testimony of Eric Harris, that probable cause existed to believe that a theft occurred.

Plaintiffs, in their Opposition, attempt to raise "facts" to conflict with the testimony provided by Eric Harris by merely citing to the newly executed Declarations. See Plaintiffs' Opposition at p. 7. Plaintiffs should not be allowed to rebut Mr. Harris' testimony in this way.

To allow Plaintiffs to rebut Mr. Harris' testimony and alter their own previous testimony would conflict with the principles set forth in Janey and Halperin. It would allow Plaintiffs to raise an issue of fact simply by submitting affidavits that conflict with prior testimony. In Janey, the court did not allow plaintiff to submit the new affidavit of the supervisor which made a prior general statement more specific. 268 F.Supp.2d at 625. Similarly, Plaintiffs should not be allowed to submit their Declarations, which conflict and/or make more specific earlier deposition testimony.

**B. Defendants had probable cause to believe that a theft occurred.**

Notwithstanding the newly executed Declarations, the facts establish that Defendant Radcliffe and Harris had probable cause. As such they are protected under Maryland's Shopkeepers' Statute.

The Maryland Shopkeepers' Statute reads as follows:

> A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for…malicious prosecution, false imprisonment, or false arrest of the person detained or arrested, whether the detention or arrest takes place by the merchant or by his agent or employee, if in detaining or in causing the arrest of the person, the merchant or the agent or employee of the merchant had, at the time of the detention or arrest, probable cause to believe that the person committed the crime of "theft". . .

Md. Cts & Jud. Proc. Code Ann. §5-402 (2002). Pursuant to the is statute, Maryland law prohibits holding Radcliffe or Mr. Harris civilly liable for the intentional torts alleged in Plaintiffs' complaint.

As fully set forth in Defendants' Motion for Summary judgment, Mr. Harris had probable cause to believe a theft occurred in his presence by the Plaintiffs. Plaintiffs aroused the suspicion

of Mr. Harris prior to the loss by acting in an unusual manner. See Exhibit 3 attached to Defendants' Motion for Summary Judgment, at pp.140-145. Mr. Harris noticed that Mr. David wore a 3/4 length leather jacket while other shoppers were in shorts due to the day's warm weather. See Exhibit 3 attached to Defendants' Motion for Summary Judgment, at pp. 140-41. Plaintiff, Thomas initially told Mr. Harris that Mr. Thomas was shopping for a 10-year anniversary gift, only later to be told that Mr. Thomas was married for fourteen years. Id. at pp. 59-60. These indications sparked some suspicion in Mr. Harris, which was later fueled by more obvious behavior.

Plaintiffs examined numerous rings, passing them back and forth between one another, purportedly trying to distract Mr. Harris. See Exhibit 3 attached to Defendants' Motion for Summary Judgment, at pp. 82, 143. Further, Plaintiffs' behavior continued to exhibit attempts at distracting Mr. Harris, specifically by taking turns at diverting his attention. In fact, Plaintiffs' Opposition confirms that Mr. Harris was distracted by Plaintiffs' questions. See Plaintiffs' Opposition at p. 9. Perhaps the most bald, undisguised attempt, Plaintiff Eric David, while Tony Thomas examined a ring, directed Mr. Harris' attention to a picture on a wall (not for sale), asking how much it cost. See Exhibit 3 attached to Defendants' Motion for Summary Judgment, at p. 88, 143. The suspicious behavior continued. Mr. Harris noted that Mr. David's gaze continued to focus on the store's surveillance cameras, and that Mr. David's subsequent movements seemed to indicate an attempt to position himself out of view of the cameras. Id. at pp. 149-50. All of these bits of conduct, ever increasing the level of suspicion, culminated with a ring disappearing.

Taking into consideration all of these circumstances, it's clear that Mr. Harris had a

reasonable suspicion that a theft had occurred by the direction of the plaintiffs. As such, there was probable cause, thereby bringing Radcliffe and Mr. Harris under Maryland's Shopkeeper Statute.

**C. Radcliffe Jewelers cannot be liable for the intentional acts of its employees acting outside of the scope of their employment, not in furtherance of any business purpose.**

As the Plaintiffs have voluntarily dismissed their causes of action premised in negligence, the only remaining counts are based upon intentional torts for the conduct of Mr. Harris; i.e.: Count IV - Malicious Prosecution, and Count VI - False Arrest and False Imprisonment. Plaintiffs state: "Plaintiffs contend liability for the intentional torts against the Store (Radcliffe) is based on a respondeat superior theory of law." See Plaintiffs' Opposition, at p. 3. The reliance on this theory is flawed as the employer is not vicariously liable for the intentional conduct of an employee if such conduct is outside the scope of employment and does not benefit the employer. As such, Radcliffe is not liable for the new allegations proffered by the Plaintiffs.

An employee's tortious conduct "is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer. See Sawyer v. Humphries, 322 Md. 247, 587 A.2d 467 (1991). Furthermore, the appellate courts have defined what is meant to "be within the scope of employment." Id. In this regard, "to be within the scope of the employment, the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment and locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master." 322 Md. At 255 (quoting East Coast Freight Lines, Inc. v. Mayor of Baltimore, 190 Md. 256, 285, 58 A.2d, 290 (1948); Tall v. Board of School Commissioners of Baltimore City, 120 Md. App. 236, 251-252, 706 A.2d 659 (1998). In Tall, the court further remarked "The Sawyer Court made clear that where an employee's actions are personal, or where

they represented departure from the purpose of furthering the employer's business or where the employee is acting to protect his own interest, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." Id. at 253.

Applying Maryland law to the case at hand, the allegations set forth in Plaintiffs' Opposition, newly executed Declarations and Complaint, allegedly committed by Mr. Harris, were not done within the scope of employment and were not done in the furtherance of any business purpose of the Defendant, Radcliffe.

The theory that the employer will not be liable for the intentional tortious conduct of an employee is well recognized. In Continental Casualty Company v. Marabile, 52 Md. App. 387, 449 A.2d 1176 (1982), the court rejected respondeat superior as a basis to impose liability on an employer based on its employee's assault and battery of another. The court stated:

> Where, however it is neither the employer personally nor someone acting as the alter ego of the employer who commits the intentional tort, there is no justification in holding the employer liable for an employee's intentional acts solely on the principal of respondeat superior.

Id. at 397. The court further held:

> When a person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, but merely a foreman, supervisor or manager, both the legal and moral reasons for permitting a common law suit against the employer collapse, and a substantial majority of modern cases bar damage suit against the employer.

Id. at 395-96 (Quoting Larson, The Law of Workmen's Compensation, § 68-21 (pp. 13:10-11, 1976).

Likewise, in this case there are no facts to suggest Mr. Harris is the alter ego of Radcliffe and therefore respondeat superior liability for the alleged conduct is not supported by applicable Maryland law. Furthermore, Plaintiffs do not have any facts to suggest to the contrary.

Plaintiffs, now suggesting in their Opposition and Declarations that Mr. Harris secreted and kept the missing ring, cannot expect to establish the liability of Radcliffe on a theory of <u>respondeat superior</u>.  Such an argument is inimical to the doctrine of <u>respondeat superior</u>.

WHEREFORE, Defendants, Eric Harris and "Radcliffe Jewelers," respectfully request that this Honorable Court disregard the newly executed Declarations, and

FURTHER, grant Defendants' Motion for Summary Judgment.

/s/
Robert L. Hebb
Federal Bar No. 23425
Semmes, Bowen & Semmes
250 West Pratt Street
Baltimore, Maryland 21201
(410) 539-5040

Attorneys for Defendants
Radcliffe Jewelers and Eric Harris

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of May, 2004, a copy of the foregoing Reply to Plaintiffs' Opposition to Motion for Summary Judgment by Radcliffe Jewelers and Eric Harris and accompanying Statement of Grounds and Authorities were filed electronically and served electronically and/or mailed, first-class, postage prepaid, to: Ted J. Williams, 1200 G Street, N.W., Suite 800, Washington, D.C. 20005, Attorney for Plaintiffs; and to James J. Nolan, Jr., Esquire, Assistant County Attorney, 400 Washington Avenue, Towson, Maryland 21204, Attorney for R. M. Harrison and Baltimore County Police Department.

/s/
Robert L. Hebb

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC DAVID, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.:  WMN 02-CV3573 |
| RADCLIFFE JEWELERS, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

**STATEMENT OF GROUNDS AND AUTHORITIES**

1. <u>Continental Casualty Company v. Marabile</u>, 52 Md. App. 387, 449 A.2d 1176 (1982), (Quoting Larson, The Law of Workmen's Compensation, § 68-21 (pp. 13:10-11, 1976).

2. <u>Halperin v. Abacus Technology Corp.</u>, 128 F.3d 191, 198 (4th Cir. 1997) <u>abrogated on other grounds by</u> <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462 (4th Cir. 1999).

3. <u>Janey v. N. Hess Sons, Inc.</u>, 268 F.Supp.2d 616 (D. Md. 2003).

4. Md. Cts & Jud. Proc. Code Ann. §5-402 (2002).

5. <u>Sawyer v. Humphries</u>, 322 Md. 247, 587 A.2d 467 (1991), <u>quoting</u> <u>East Coast Freight Lines, Inc. v. Mayor of Baltimore</u>, 190 Md. 256, 58 A.2d, 290 (1948).

6. <u>Tall v. Board of School Commissioners of Baltimore City</u>, 120 Md. App. 236, 706 A.2d 659 (1998).