IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC DAVID, <u>et al.</u>                    :

v.                                          :    Civil Action No. WMN-02-3573

RADCLIFFE JEWELERS, <u>et al.</u>           :


*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

* ERIC DAVID, <u>et al.</u>                 :

v.                                          : Civil Action No. WMN-04-0019

RANDY GURALECZKA                            :


*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

*


**<u>MEMORANDUM</u>**

In these two related actions, motions for summary judgment
have been filed by the following defendants: Rashelle Harrison
(Paper No. 40 in Civil Action No. WMN-02-3573); Radcliffe
Jewelers and Eric Harris (Paper No. 39 in Civil Action No. WMN-
02-3573); and Randy Guraleczka (Paper No. 5 in Civil Action No.
WMN-04-19).[1]  The motions are fully briefed.  Upon a review of
the pleadings and the applicable case law, the Court determines
that no hearing is necessary and that all but Defendant Harris

---

[1] Also pending is Defendant Rashelle Harrison's Request
for Admission of Fact, Paper No. 36.  As the claims against
Harrison will be dismissed, this motion will be denied as
moot.

are entitled to summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

These cases arise out of what Plaintiffs Eric David and Tony Thomas allege was their wrongful arrest on April 6, 2001, for stealing a wedding ring from Defendant Radcliffe Jewelers' Towson Town Center Mall store.  The facts surrounding this incident, unless otherwise noted, are undisputed.

Plaintiffs arrived together at the Radcliffe store and indicated that Thomas was interested in looking for a wedding ring as an anniversary present for his wife.  Defendant Eric Harris assisted them and directed Thomas to a display case in the back of the store where Thomas took a seat.  David remained standing near Thomas.  Harris showed Plaintiffs several rings that they passed between them.  Harris pulled these rings one at a time out of an enclosed display case.

Harris then pulled out an entire tray of rings and placed it in front of Plaintiffs.  Harris states that he is certain that when he removed the tray from the case, each slot in the tray contained a ring.  Plaintiff David states that he "[does] not believe that all the slots were filled with rings."  David Declaration at ¶ 19.  Harris was showing Thomas a ring from the tray when David asked him a question.  He turned to David to

respond to the question and when he returned his attention to Thomas, Harris states that he noticed that a ring was now missing. He asked Plaintiffs to "quit playing around" and return the ring, stating that if they would do so, he would not call the police. Plaintiffs repeatedly denied having taken a ring.

Defendants claim that Plaintiffs then insisted that security be called. Plaintiffs counter that they made that request only after Harris repeatedly threatened to call the police. A store security officer, Ramunas Kligys, did come over and with the Plaintiffs, attempted to find the missing ring with no success. While Plaintiffs remained with the security guard, Harris went to a back room and reviewed videotapes taken by the store's security cameras. After returning from viewing the videotapes, Harris told Plaintiffs that the tapes confirmed that the tray was full when it was placed on the counter and he continued to accuse David of having possession of the ring. David removed the jacket that he was wearing, emptied his pockets, and no ring was found.

At Plaintiffs' insistence, the police were called.

Officers Rashelle Harrison and Kyle Woodward responded.[2]  After
hearing Harris's account of events, Harrison reviewed the
videotape but found it inconclusive.  She then asked Plaintiffs
if they would consent to a search and they agreed.  Officer
Woodward conducted the search but again, no ring was found.

Because Harrison was inexperienced in dealing with
shoplifting cases, she contacted her supervisor, Cpl. Brian
Patrick Kelly, to seek his advice.  She relayed to Kelly the
facts that were available to her at the time, which consisted
in large part of the version of events given to her by Harris.
Kelly then relayed this information to his supervisor,
Defendant Guraleczka.  After speaking directly with Harris,
Guraleczka instructed Harrison, through Kelly, to arrest
Plaintiffs.

Plaintiffs were taken to the police station and a thorough
search was conducted.  No ring was ever found.  While
Plaintiffs were charged with felony theft, those charges were
eventually dropped on the eve of their criminal trial.  The
Assistant State's Attorney handling the case has testified that
the charges were dropped because he believed that it would be

_____

[2] Several other Baltimore County police officers also
responded, but they left shortly thereafter to respond to
another call.

4

difficult to prove guilt beyond a reasonable doubt absent the recovery of the ring.  Plaintiffs testified that before agreeing to drop the charges, the prosecutor attempted on several occasion to obtain a waiver absolving the jewelry store from any liability for false arrest.  Plaintiffs refused to give such a waiver.

Plaintiffs originally filed a suit naming Baltimore County, Maryland, Officer Harrison, Radcliffe Jewelers, and Harris as Defendants.  Civil Action No. WMN-02-3573. Plaintiffs asserted the following causes of action: Count I - Violation of civil rights under 42 U.S.C. § 1983 against Baltimore County and Officer Harrison; Count II - Negligence against Officer Harrison; Count III - Negligent supervision and training and maintenance of personnel against Baltimore County and Radcliffe Jewelry; Count IV - Malicious prosecution against all Defendants; Count V - Negligence against Harris; and, Count VI - False arrest and false imprisonment against all Defendants.

Prior to discovery, Defendant Baltimore County and Harrison filed a motion to dismiss, or in the alternative, for

summary judgment.[3]  In response to that motion, the Court completely dismissed Baltimore County from the action, and also dismissed Count II, the negligence claim, against Harrison. The Court denied the motion as to the remainder of Plaintiffs' claims concluding, based upon the sparse record then before the Court, that there was a genuine dispute of fact as to whether Harrison had probable cause to arrest or if she was entitled to qualified immunity.

Near the close of discovery in Civil Action No. WMN-02-3573, Plaintiffs filed a second action against Defendant Guraleczka, Civil Action No. WMN-04-0019, bringing a single claim for a violation of 42 U.S.C. § 1983.

Now with the benefit of a more complete record, Harrison has moved for summary judgment on the same ground as raised previously, i.e., that any reasonable person in her position would have concluded that she had probable cause to arrest Plaintiffs.  In the alternative, Harrison argues that she is entitled to qualified immunity from liability under § 1983, and statutory immunity from liability under the state law claims. Defendant Guralezka moves for judgment on similar grounds.

_____

[3] Unlike the County and Harrison, Radcliffe and Harris answered the complaint without filing a preliminary dispositive motion.

Radcliffe and Harris also move for summary judgment as to all the claims asserted against them.  In responding to the Radcliffe/Harris motion, Plaintiffs indicated their intention to abandon their negligence claims, for reasons that the Court will explain below.  As a result of this concession, only claims for malicious prosecution and false arrest and imprisonment remain against Radcliffe and Harris.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation.  Anderson, 477 U.S. at 248.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine

7

issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When considering the motion, the court assumes that all of the non-moving party's evidence is worthy of belief and justifiable inferences are drawn in favor of the non-moving party.  <u>Matsushita Elec. Indust. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  If the movant demonstrates that there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial.  <u>Celotex</u>, 477 U.S. at 324.  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  Instead, the evidentiary materials must show facts from which the finder of fact could reasonably find for the non-moving party.  <u>Anderson</u>, 477 U.S. at 252.  At the summary judgment phase, it is not appropriate for the court to make credibility determinations, weigh the evidence, or draw inferences from the facts which are adverse to the nonmoving party; these are jury functions.  <u>Anderson</u>, 477 U.S. at 255.

**III. DISCUSSION**

**A. Harrison and Guraleczka**

Both Harrison and Guraleczka assert that they are entitled to qualified immunity from liability under § 1983.  As this Court stated in its July 7, 2003 Memorandum and Order in Civil Action No. WMN-02-3573, [t]he Fourth Circuit has formulated a three part analysis to determine whether an officer is entitled to qualified immunity: "1) identify the right allegedly violated; 2) decide whether that right was clearly established at the time of the alleged violation; and, if so, 3) determine whether a reasonable person in the officer's position would have known that his or her conduct violated that right." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).  "If the right was not clearly established at the relevant time or if a reasonable officer might not have known his or her conduct violated that right, the officer is entitled to immunity." Smith v. Reddy, 101 F.3d 351 (4th Cir. 1996).

Here, the constitutional right allegedly violated was Plaintiff's Fourth Amendment right to be secure in their persons against unreasonable seizure.  More specifically, the right at issue was the right not to be arrested except upon probable cause to believe that Plaintiffs had committed the theft of the ring.  There is, of course, no dispute that this

9

right was clearly established at the time of Plaintiffs'
arrest.

Thus, the only question is whether a reasonable person in
Defendant Harrison's or Guraleczka's position would have
thought that there was probable cause to effect Plaintiffs'
arrest.  "'Probable cause,' for Fourth Amendment purposes,
means 'facts and circumstances within the officer's knowledge
that are sufficient to warrant a prudent person, or one of
reasonable caution, in believing, in the circumstances shown,
that the suspect has committed, is committing, or is about to
commit an offense.'" Pritchett, 973 F.2d at 314 (quoting
Michigan v. De Fillippo, 443 U.S. 31, 37 (1979)).  In assessing
the existence of probable cause, district courts examine the
totality of the circumstances known to the officers at the time
of the arrest.  See Illinois v. Gates, 462 U.S. 213, 232
(1983).

Plaintiffs' characterization of the evidence, and the
inferences that should be drawn therefrom, has changed somewhat
since the inception of this litigation.[4]  Plaintiffs now assert

_____

    [4] Defendants criticize Plaintiffs for presenting a new
theory late in the litigation.  The Court finds Plaintiffs'
current position not so inconsistent with their position
throughout this litigation that the Court must ignore their
current arguments.  The complaint alleged both negligent and

10

that the evidence shows that, shortly after first accusing
Plaintiffs of stealing the ring, Harris became aware that the
ring, in fact, was not missing.  Nevertheless, Harris continued
to accuse Plaintiffs of the theft and repeated his accusation
to the police because he was unwilling to admit his mistake.

This new slant on the evidence obviously impacts
Plaintiffs' claim against Harris; it resulted in Plaintiffs
abandoning the negligence claims against Harris and Radcliffe
and pursuing the intentional torts alone.  In the Court's view,
the new characterization also impacts Plaintiffs' claims
against Harrison and Guraleczka; under Plaintiffs' current
interpretation of events, Harrison and Guraleczka were given
intentionally misleading information from Harris and it is on
that information that they made their probable cause determinations.

The Court finds that Harrison and Guraleczka are entitled
to qualified immunity.  When Harrison arrived at the store,
Harris told her that he had a full tray of rings sitting on the
counter and that after being momentarily distracted by David,
Harris noticed that a ring was missing.  As David and Thomas

---

intentional misconduct on the part of Harris and they have
accused Harris of lying, at least as to some matters, since
the beginning of this litigation.  See David's Declaration
Attached to Opposition to Harrison's First Summary Judgment
Mot. at ¶ 41 (accusing Harris of lying about the videotape).

were the only two customers in the vicinity of the rings,
Harris stated that he was certain that they had taken it.
Harris also told Harrison that the value of the ring was
$1,200, which would make its theft a felony.  While Harrison
reviewed the videotape, she concluded that it neither proved
nor disproved that Plaintiffs has stolen a ring.[5]

Guraleczka also received the majority of his information
concerning the incident directly from Harris.  Harris told
Guraleczka that he was "100% sure" that a ring was missing from
the case and that Plaintiffs had taken the ring.  Guraleczka
Dep. at 14, 15.  The Court notes that Guraleczka had compelling
reasons to accept Harris's account.  Harris is a retired
Baltimore County Police Detective and Harris and Guraleczka
were acquainted with one another through their police work.
Guraleczka based his finding of probable cause on his
conversation with Harris, and Harrison based her decision to
arrest Plaintiff's on Guraleczka's authorization.  Plaintiffs
do not challenge that Harris made these statements to Harrison
or Guraleczka, they simply challenge the accuracy of Harris's

_____

[5] The Court has also reviewed the tape and, like Harrison,
finds that it would neither support nor undermine a probable
cause determination.

12

information.

"When an officer has received his information from some
person – normally the putative victim or an eye witness - who
it seems reasonable to believe is telling the truth, he has
probable cause.  Probable cause does not depend on the witness
turning out to have been right; it's what the police know, not
whether they know the truth, that matters."  Gramenos v. Jewel
Companies, Inc., 797 F.2d 432 (7th Cir. 1986), cert. denied,
481 U.S. 1028 (1987).  As Judge Easterbrook further observed in
Gramenos, the eyewitness account of a store employee carries
particular indicia of credibility.  A store will insist that
its employees "err on the side of caution" as the store "does
not want to embarrass and anger an honest customer - not only
because it is bad for business but also because a false charge
of crime may lead to costly tort litigation."  Id. at 439.
Those considerations, coupled with Harris's long career in law
enforcement and that he was known personally to Guraleczka,
makes it abundantly reasonable for Harrison and Guraleczka to
credit Harris's accusations.

Plaintiffs provide little to support the conclusion that
Harrison or Guraleczka should have suspected that Harris was
not telling the truth.  Plaintiffs do cite the failure to find

the ring on the person of Plaintiffs and the fact that it would
have been difficult for Plaintiffs to have secreted it
elsewhere, given the presence of surveillance cameras and an
experienced police officer, as proof that they could not have
stolen or attempted to steal the ring.  They also criticize
Guraleczka's expressed belief that it was not necessary for him
to hear Plaintiffs' side of the story, as it was "immaterial."
Guraleczka Dep. at 23.

    Like Guraleczka, the Court questions that it was necessary
for him to speak directly with Plaintiffs.  He could safely
assume that they would deny taking the ring, but a suspect's
denial is unlikely to be determinative of probable cause.  As
to Plaintiffs' apparent inability to hide the ring while being
observed by Harris and the security cameras, the Court has
already noted that the images from the cameras were not
particularly probative.  Nor can Harrison and Guraleczka be
expected to rule out the possibility that a theft could have
occurred based upon Harris's observational skills as a police
officer while, at the same time, ignoring his assertion that he
was 100% sure that Plaintiffs had taken the ring.

    For these reasons, the Court finds that Guraleczka and
Harrison are entitled to qualified immunity from liability

14

under § 1983 and will grant those defendants judgment as to those claims.

Defendant Harrison also argues that she is entitled to immunity from liability for the state law torts asserted in Counts IV and VI.  Under Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1), "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."  There is no dispute that Defendant Harrison was acting in a discretionary capacity, and within the scope of her employment.  In addressing Harrison's entitlement to immunity from state law claims in its previous Memorandum Opinion, the Court denied the motion, observing that malice can be inferred from a lack of probable cause and, on the sparse record then before the Court, concluding that there remained a dispute of fact as to whether there was probable cause.  See July 7, 2003 Memorandum at 10 n.2.  Now, given the Court's conclusion that Harrison had probable cause, the Court also concludes that Harrison is entitled to judgment on the state law claims.

### B. Radcliffe and Harris

    With Plaintiffs' decision to abandon any claims for
negligence against Harris or Radcliffe, what remains are claims
for malicious prosecution and false arrest and false
imprisonment.  Plaintiffs clarify in their pleadings that the
claims against Radcliffe are premised on Radcliffe's <u>respondeat</u>
<u>superior</u> liability for the actions of Harris.  Opp. to
Radcliffe/Harris Motion at 3.  Maryland law is clear, however,
that absent considerations not present here, an employer is not
liable for the intentional misdeeds of an employee.  "[W]here
an employee's actions are personal, or where they represented
departure from the purpose of furthering the employer's
business or where the employee is acting to protect his own
interest, even if during normal duty hours and at an authorized
locality, the employee's action are outside the scope of his
employment."  <u>Tall v. Board of School Comm'rs of Baltimore</u>
<u>City</u>, 120 Md. App. 236, 352 (1998) (citing <u>Sawyer v. Humphries</u>,
322 Md. 247 (1991)).  Accordingly, the claims against Radcliffe
must be dismissed.

    As to the claims against Harris, he raises three main
challenges.  First, he argues that he is entitled to immunity

under Maryland's Merchant's Statute.[6]  That immunity, however,
is dependent upon the defendant having probable cause at the
time of the arrest or detention.  If Plaintiffs' version of
events is credited, which the Court must do at this stage in
the litigation, Harris did not believe that he had probable
cause to  detain Plaintiffs.

In their pleadings, Plaintiffs support their theory that
Harris knew shortly after accusing them of theft that the ring
was not missing on a somewhat tortured reading of the police
report prepared by Harrison.  Harrison recounted that Harris
told her that after being distracted momentarily by David, he
"then directed his attention back to the display case to return

_____

[6] The statute provides,

>    A merchant or an agent or employee of the
>    merchant who detains or causes the arrest
>    of any person shall not be held civilly
>    liable for . . . malicious prosecution,
>    false imprisonment, or false arrest of the
>    person detained or arrested, whether the
>    detention or arrest takes place by the
>    merchant or by his agent or employee, if in
>    detaining or in causing the arrest of the
>    person, the merchant or the agent or
>    employee of the merchant had, at the time
>    of the detention or arrest, probable cause
>    to believe that the person committed the
>    crime of "theft" . . . .

Md. Code Ann., Cts. & Jud. Proc. § 5-402.

the ring that Mr. Thomas had handed back to him when he noticed
one of the slots was empty." Crime Report at 2. From this
language, Plaintiffs conclude that Harris "was holding in his
hand the very ring that was meant to be placed in the empty
slot." Opp. to Harrison Mot. at 5. It seems highly
implausible, however, that one of the three would not have
noticed the ring in Harris's hand while he is animatedly
accusing Plaintiffs of theft.

The Court need not accept this particular portion of
Plaintiffs' argument in order to conclude that there are
disputed facts rendering summary judgment inappropriate. If
Plaintiffs' testimony is credited, Harris lied about what his
review of the videotape revealed. There is also an
inconsistency as to the particular ring that Harris reported
missing, and the ring that was actually missing from the
store's inventory. There are numerous disputes as to Harris's
observations of Plaintiffs' conduct. For example, Harris
states that his suspicions were raised because David wore
inappropriate clothing for the weather on that particular day,
he kept looking at and attempting to hide from the security
cameras, and he tried to distract Harris by asking the price of
a picture on the wall. David denied that he did any of those

18

things.  Ultimately, whether Harris had probable cause will
turn on the factfinder's assessment of the credibility of each
of the witnesses.

Harris's remaining arguments require little response.  In
moving for judgment on the false imprisonment claim, Harris
argues that he never deprived Plaintiffs of their liberty
because he never expressly told them that they were not free to
leave the store.[7]  Under the facts as viewed in the light most
favorable to Plaintiffs, however, the jury could find that
Plaintiffs had reason to believe that they were not free to
simply walk out of the store after being accused of theft.  The
presence of a security guard separating Plaintiffs from the
door and their observation that Harris was carrying a gun would
bolster that conclusion.

In moving for judgment on the malicious prosecution claim,
Harris argues that it was not him, but Plaintiffs, that
insisted that the police be called and, therefore, it was not

---

[7] To establish a claim of false imprisonment under
Maryland law, a plaintiff must prove that the defendant
deprived him of his liberty with neither plaintiff's consent
nor legal justification.  See Great Atlantic and Pacific Tea
Co. v. Paul, 256 Md. 643, 654 (1970).

he who instituted the criminal proceedings.[8]   Plaintiffs
respond that they only asked that the police be called after
Harris repeatedly threatened to call them himself.  Once the
police arrived, it was Harris's information that led to the
criminal charges.

       For the above stated reasons, the Court concludes that it
must deny Harris's request for summary judgment.

       A separate order consistent with this memorandum will
issue.


                                    /s/
                         _____
                         William M. Nickerson
                         Senior United States District Judge


Dated: September 30, 2004



_____

       [8] One of the necessary elements for a cause of action for
malicious prosecution is that the defendant instituted or
continued a criminal proceeding against the plaintiff.  Exxon
Corp. v. Kelly, 281 Md. 689, 693 (1978).